# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-334

**CRAIG STEVEN ARABIE, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-2738
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and James T. Genovese, Judges.

**AMENDED AND, AS AMENDED, AFFIRMED.**

William B. Baggett
Wells Talbot Watson
Baggett, McCall, Burgess, Watson & Gaughan
P. O. Drawer 7820
Lake Charles, LA 70605-7820
Telephone: (337) 478-8888
COUNSEL FOR:
    Plaintiffs/Appellants - Jason Doucet, Charles Hardy, Bennett Talbot, Craig Steven Arabie, Scott Levy, Dennie Bankston, Larry Thomas, John Giovanni, Glen Miller, Dexter Breaux, Jimmy Buckelew, Randall Fontenot, Jerry Richard, Jr., and Joseph Burnett

Peter J. Butler
2000 Belle Chase Hwy. - 3rd Floor
Gretna, LA 70056
Telephone: (504) 433-9350
COUNSEL FOR:
    Plaintiffs/Appellants - Jason Doucet, Charles Hardy, Bennett Talbot, Craig Steven Arabie, Scott Levy, Dennie Bankston, Larry Thomas, John Giovanni, Glen Miller, Dexter Breaux, Jimmy Buckelew, Randall Fontenot, Jerry Richard, Jr., and Joseph Burnett

Robert E. Landry
Scofield, Gerard, Singletary & Pohorelsky, L.L.C.
901 Lakeshore Drive - Suite 900
Lake Charles, LA 70601
Telephone: (337) 433-9436
COUNSEL FOR:
    Defendant/Appellee - Citgo Petroleum Corporation

Kirk Albert Patrick, III
Law Offices of Donohue Patrick
450 Laurel Street - Suite 1500
Baton Rouge, LA 70801
Telephone: (225) 214-1908
COUNSEL FOR:
    Defendant/Appellee - R & R Construction, Inc.

Yul Dubart Lorio
Doucet, Lorio & Moreno
One Lakeshore Drive - #1600
Lake Charles, LA 70601
Telephone: (337) 433-0100
COUNSEL FOR:
    Defendant/Appellee - Citgo Petroleum Corporation

Marshall Joseph Simien, Jr.
Simien Law Firm
Capital One Tower - Suite 1110
One Lakeshore Drive
Lake Charles, LA 70629
Telephone: (337) 497-0022
COUNSEL FOR:
    Defendant/Appellee - Citgo Petroleum Corporation

Richard Edward Sarver
Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C.
909 Poydras Street - Suite 2400
News Orleans, LA 70112
Telephone: (504) 589-9700
COUNSEL FOR:
    Defendant/Appellee - Citgo Petroleum Corporation

Richard Elliott Wilson
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA 70601
Telephone: (337) 436-6611
COUNSEL FOR:
    Plaintiffs/Appellants - Jason Doucet, Charles Hardy, Bennett Talbot, Craig
    Steven Arabie, Scott Levy, Dennie Bankston, Larry Thomas, John Giovanni,
    Glen Miller, Dexter Breaux, Jimmy Buckelew, Randall Fontenot, Jerry Richard,
    Jr., and Joseph Burnett

**THIBODEAUX, Chief Judge**

Fourteen plaintiffs, who were exposed to Citgo Petroleum Corporation's slop oil and waste water release, assert that the trial court erred in its assessment of damages. We find—because a defendant is liable for all the costs associated with a plaintiff's surgery if the defendant's actions accelerated the need for that surgery—that the trial court misapplied the law by awarding only a portion of damages incurred by one of the plaintiffs who has undergone a surgery as a result of his exposure. We also find that the trial court abused its discretion by awarding all of the plaintiffs, except three, the same amount in pain and suffering damages associated with the exposure even though the plaintiffs' symptoms varied significantly in duration and intensity. Finally, we increase to the lowest point within the trial court's discretion, the pain and suffering award to five of the plaintiffs whose exposure-related symptoms lasted one year or longer.

## I.

### ISSUES

In this toxic release case, we shall consider:

(1)  whether the trial court erred by awarding three of the plaintiffs, Dennis Bankston, Larry Thomas, and Charles Hardy, only a portion of their damages where the plaintiffs had various pre-existing conditions;

(2)  whether the trial court abused its discretion by awarding the same quantum of pain and suffering damages to all of the plaintiffs, except three, where the duration and intensity of the plaintiffs' symptoms varied significantly; and,

(3)  having found an abuse of discretion as to some of the plaintiffs, what was the lowest award within the trial court's discretion where the plaintiffs' symptoms included nausea, stomach pain, diarrhea, dizziness, respiratory and sinus problems, sore throat, rash, acne, headaches, eye irritation, sleeping

difficulties, fatigue, cough, and skin peeling and where these symptoms lasted anywhere from one to twelve months and some were ongoing at the time of the trial.

## II.

## FACTS

This case arises out of the 2006 oil spill and air release at Citgo's refinery in Lake Charles. After a trial, the court concluded that the plaintiffs were entitled to various damage awards whose amounts are subjects of this appeal.

The trial court awarded each of the plaintiffs $30,000.00 in punitive damages and $2,500.00 for fear of developing a disease. Three of the plaintiffs—Dennis Bankston, Charles Hardy, and Larry Thomas—received damages associated with the aggravation of their pre-existing conditions in addition to the damages associated with the exposure.[1] The rest of the plaintiffs, except the two who received $4,500.00, received $5,000.00 in pain and suffering damages associated with their exposure. Other damage awards, such as medical expenses and lost wages, varied from plaintiff to plaintiff.

The trial court found that the plaintiffs suffered the following injuries as a result of Citgo's fault in causing the spill:

(1) Craig Arabie experienced nausea, burning eyes, and dizziness for about two months; he generally felt ill for six months and suffered from diarrhea for one year. He received $5,000.00 for his pain and suffering.

(2) Dennis Bankston experienced nausea for about a month. He also suffered from headaches, sinus problems, and had difficulty breathing while near the

---

[1]Both Bankston and Thomas received $5,000.00 in pain and suffering damages associated with the exposure in addition to the pain and suffering damages awarded for the aggravation of their pre-existing conditions. The trial court did not separate Hardy's pain and suffering damages into those associated with the exposure and those associated with the aggravation of his pre-existing conditions.

spill. The trial court found that Bankston had a pre-existing sinus problem that was aggravated by the exposure which "accelerated the need for what would have been a necessary surgery." Thus, the trial court divided Bankston's damages into the ones associated with the exposure and the ones associated with the surgery. The trial court found that Bankston's damages associated with the surgery were: (a) $17,631.80 in medical expenses; (b) $2,500.00 in lost wages; and, (c) $30,000.00 in general damages. Yet, the trial court awarded only ten percent of these damages, i.e., $5,012.00. In addition, Bankston received $5,000.00 for his pain and suffering associated with the exposure.

(3) Dexter Breaux suffered from shortness of breath and nausea for three to four weeks, headaches for six months, sinus irritation for ten months, and fatigue. He received $5,000.00 for his pain and suffering.

(4) Jimmy Buckelew suffered from a sore throat, headache, and weakness for ten to eleven months. He had nausea and stomach pain until the materials were removed. In its written reasons for judgment, the trial court also stated that "[h]is pre-existing high blood pressure and diabetes were aggravated." Yet, two sentences later, the trial court wrote: "[t]he court was not satisfied that an aggravation of Mr. Buckelew's pre-existing conditions occurred." Buckelew was awarded $5,000.00 in pain and suffering. None of his awards was reduced by a percentage because of the pre-existing conditions.

(5) Joseph Burnett experienced eye irritation, respiratory and sinus problems for four to five months, as well as stomach cramps and nausea for three to four months. The trial court found that he experienced less exposure than his co-workers and awarded him $4,500.00 for his pain and suffering.

(6) Jason Doucet experienced nausea, diarrhea, sore throat, sinus inflammation, cough, and a rash from his ankle to his knee. Finding that all of his symptoms were resolved after five or six months, the trial court awarded Doucet $5,000.00 for the pain and suffering.

(7) Randall Fontenot experienced a rash, headaches, sleeping difficulties, and problems eating at work for three months. He was awarded $5,000.00 for his pain and suffering.

(8) John Giovanni experienced diarrhea and burning eyes for two to three weeks and sinus problems and headaches for a year. The trial court found that he had a continuing problem with his sense of smell. The court awarded Giovanni $5,000.00 for the pain and suffering.

(9) Charles Hardy experienced headaches, blurred vision, depression, cough, fatigue, and sleeplessness. Some of these symptoms, as well as a rash and a sore throat, have reoccurred and were ongoing at the time of the trial. Hardy was out of work for four to five months because of his depression and eye problems. Because of Hardy's pre-existing conditions, the trial court reduced his damages associated with the exposure and the aggravation of his pre-existing conditions by seventy-five percent. Even with the reduction, Hardy's damages exceeded $50,000.00. Plaintiffs designated their causes of action as "non-jury" under La.Code Civ.P. art. 1732, thereby limiting their claims for damages to $50,000.00 per plaintiff. Thus, the trial court reduced Hardy's damages to $50,000.00.

(10) Scott Levy experienced a rash on his chest and head, nausea, and respiratory problems for one to two months. He had elevated liver enzymes for six months. The trial court found that Levy had less exposure than other plaintiffs

because of his work schedule and, therefore, awarded him $4,500.00 for the pain and suffering.

(11) Glen Miller suffered from headaches, diarrhea, dizziness, when near the spill, for two to four months. He also experienced blistering and peeling on the hand that came into contact with the slop oil. Miller's sinus problems and peeling of the hand were ongoing at the time of the trial. The trial court awarded Miller $5,000.00 for the pain and suffering.

(12) Jerry Richard, Jr. suffered from a rash and acne for two to three months. He experienced diarrhea, a sore throat, and nausea for one month. Richard had sleep difficulties and fatigue for four months, as well as sinus problems and cough for six months. Richard experienced severe headaches for seven months and shortness of breath for one year. The trial court awarded Richard $5,000.00 for the pain and suffering associated with the exposure.

(13) Bennett Talbot suffered from nausea and burning eyes for about two weeks. He experienced headaches and sore throat for about two months, and diarrhea and constipation for a few months. Talbot had sinus problems at the time of the trial. The trial court awarded Talbot $5,000.00 for the pain and suffering.

(14) Larry Thomas experienced problems swallowing, suffered from a sore throat, a rash, and sleeplessness for four to five months. He had headaches and eye irritation for six months. The trial court found that he had ongoing sinus problems and that it took about six months after the clean up for Thomas's diabetes to become properly regulated again. The trial court concluded that some long-term sleep and rash issues were the only symptoms that were aggravated by Citgo's delictual conduct. Accordingly, the trial court awarded twenty percent of the $2,172.00 in medical expenses and of the $8,000.00 in pain and suffering damages

that the trial court associated with the aggravation of Thomas's pre-existing conditions. In addition, the trial court awarded Thomas $5,000.00 for the pain and suffering associated with the exposure.

In its written reasons for judgment, the trial court stated:

> [t]here is significant disagreement as to causation among the various experts in this matter. However, taking the evidence as a whole, the plaintiffs have established that more probably than not, the admitted negligence of the spill was a cause-in-fact (albeit to different degrees) of their various injuries. It was also established that the effects were short term, approximately one to three months, and no long term or permanent injuries were suffered.

The plaintiffs appealed, arguing that the trial court misapplied the law related to the aggravation of the pre-existing conditions by awarding Bankston, Hardy, and Thomas only a percentage of their damages. The plaintiffs further assert that the trial court erred by finding that the effects of the spill were short-term, approximately one to three months in duration, and, at the same time, finding that several of the plaintiffs had ongoing symptoms at the time of the trial. Finally, the plaintiffs assert that the trial court abused its discretion by awarding essentially the same amount for the pain and suffering to all of the plaintiffs.

On the other hand, arguing that plaintiffs Bankston, Hardy, and Thomas[2] should receive damages only for the *aggravation* of their pre-existing conditions, Citgo maintains that the trial court did not err by awarding only a percentage of damages to these plaintiffs.[3] Furthermore, Citgo submits that the trial court was not inconsistent in its written reasons for judgment because the trial court recited the

_____

[2]This court notes the typographical error in Citgo's brief to this court where it claimed that the three plaintiffs who were awarded percentages of their damages were Bankston, Hardy, and Doucet. We presume that Citgo meant to name Thomas instead of Doucet because Thomas is the only plaintiff, other than Bankston and Hardy, who was awarded a percentage of his damages.

[3]In its brief, Citgo argues that the trial court erred by concluding that the plaintiffs proved the causation element of their claims. Because Citgo did not answer this appeal, we do not consider the question of causation pursuant to La.Code Civ.P. art. 2133.

symptoms each plaintiff *alleged* to have suffered. Thus, Citgo argues, the trial court found that plaintiffs *proved* only one to three months suffering from the symptoms. Finally, because the trial court found that the plaintiffs' symptoms were transient in nature, Citgo maintains that the trial court did not award an abusively low amount in damages.

III.

## STANDARD OF REVIEW

Appellate courts review the trial court's award of damages for abuse of discretion. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. The trial court's assessment of the appropriate amount of damages is a finding of fact to which appellate courts give great deference on review. *Id.* Thus,

> [b]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

*Guillory v. Lee*, 09-75, p. 15 (La. 6/26/09), 16 So.3d 1104, 1117 (citations omitted).

Nevertheless, "[a]lthough appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987) (citation omitted). Thus, the appellate courts are not required to affirm a factual finding "reached by overlooking applicable legal principles" simply because of the standard of review. *Id.* If the trial court erroneously applied the law which interdicted the fact-finding process, "the appellate court is to review the evidence de novo and apply the correct legal principles." *Hebert v. Southwest La. Elec.*

*Membership Corp.*, 95-405, p. 10 (La.App. 3 Cir. 12/27/95), 667 So.2d 1148, 1156, *writs denied*, *McSpadden v. Southwest La. Elec. Membership Corp.*, 96-277, 96-798 (La. 5/17/96), 673 So.2d 607, 608 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742).

IV.

## LAW AND DISCUSSION

This case involves two sets of plaintiffs. For the first set of plaintiffs, which includes Bankston, Hardy, and Thomas, the trial court determined a quantum of damages associated with the aggravation of their pre-existing conditions in addition to the damages associated exclusively with the exposure. The trial court then reduced the damage awards for the aggravation by a percentage that the trial court determined to be due to the pre-existing conditions.

The second set of plaintiffs, which includes all other plaintiffs, received either $4,500.00 or $5,000.00 for the pain and suffering associated with the exposure. In addition, each plaintiff in both sets received $2,500.00 for fear of developing a disease and $30,000.00 in punitive damages, as well as medical expenses and lost wages.

First, we consider whether the trial court misapplied the law by reducing the damage awards associated with the aggravation of the pre-existing conditions of the first set of plaintiffs. Here, we do not review the quantum of damages per se. Rather, we review whether the trial court misapplied the law and, thereby, erred by reducing the quantum of damages the trial court determined to be due to these plaintiffs. Here, we apply a de novo standard of review.

8

Next, applying an abuse-of-discretion standard of review, this court examines whether the trial court's assessment of the plaintiffs' damages for the pain and suffering was abusively low.

**A) The Trial Court's Percentage of the Damages Award
to Three of the Plaintiffs**

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code art. 2315. "[A] defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." *Am. Motorist Ins. Co. v. Am. Rent-All, Inc.*, 579 So.2d 429, 433 (La.1991). "[W]hen the defendant's tortious conduct aggravates a pre-existing injury or condition, he must compensate the victim for the full extent of this aggravation." *Lasha v. Olin Corp.*, 625 So.2d 1002, 1003 (La.1993).

When it comes to damages, in some cases a tension may arise between the principle of defendant's liability only for the aggravation of the plaintiff's pre-existing conditions and the principle of the defendant's taking his victim as he finds him. A thorough review of our jurisprudence and the synthesis of these two principles reveal that when a plaintiff's pre-existing condition is aggravated, the plaintiff is entitled to damages attributable to the *aggravation*. On the other hand, when the plaintiff's pre-existing condition makes that plaintiff vulnerable to a new condition, from which the plaintiff did not suffer before the injury, the defendant is liable for all the damages associated with this new injury even though the plaintiff would not have had the new injury had the plaintiff not suffered from the pre-existing condition.

The following illustration may be helpful. If a plaintiff suffered from migraine headaches before the injury, but those headaches intensified or increased in

frequency after the injury, the plaintiff is entitled to damages attributable only to the aggravation of the pre-existing headache. On the other hand, if a plaintiff suffered from osteoporosis and the defendant's negligence caused the plaintiff to break her limb, then the plaintiff is entitled to the entirety of the damages associated with the broken limb even though the plaintiff would not have broken her limb had she not suffered from osteoporosis.

Thus, where a heavy smoker had experienced ordinary upper respiratory problems, such as bronchitis and sinusitis, prior to his exposure to chlorine gas but was diagnosed with chronic bronchitis, clinical asthma, and depression after the exposure, the supreme court held the defendant liable for all of the damages the plaintiff experienced "even though under the same circumstances a normal person would not have suffered that illness or injury." *Lasha*, 625 So.2d at 1006. The supreme court reasoned that

> [t]he defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.

*Id*. at 1005 (citations omitted).

Similarly, this court held the defendant liable for all of the plaintiff's medical expenses, lost wages, and general damages associated with a back surgery even though the plaintiff would eventually have undergone the surgery because he had congenital problems with his spine that were aggravated by chronic inflammatory problems. *Abshire v. Wilkenson*, 01-75 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158. This court reasoned that "although he may have required surgery at some point in the

10

future," because the defendant takes the victim as he finds him, the plaintiff was entitled to all of the damages. *Id.* at 1168.

On the other hand, the supreme court has placed its imprimatur upon an award of a fraction of plaintiff's medical expenses where the plaintiff, prior to the car accident at issue in the case, had a history of chronic pain and numbness in his neck, lower back, legs, and arms, had undergone a back and a carpal tunnel release surgeries, experienced depression, bruxism, and other various problems and pains. The supreme court reasoned that "the jury could have reasonably concluded plaintiff was a chronic pain patient, and underwent a previous surgery as a result of neck pain . . . which did not fully resolve his painful condition." *Guillory*, 16 So.3d at 1124. The supreme court also concluded that, given the plaintiff's pre-existing conditions, $10,000.00 for the pain and suffering was not abusively low in this case even though the plaintiff underwent a discography with cervical discectomy subsequent to the accident at issue.[4] *Id.*

Here, the trial court found that Citgo's conduct "accelerated the need for what would have been a necessary surgery" for Dennis Bankston. The court then reduced Bankston's damages associated with the surgery by ninety percent. This court concludes that the trial court has misapplied the law with respect to this plaintiff. Like the plaintiff in *Abshire*, Bankston had a congenital problem and some sinus problems prior to the exposure. Both here and in *Abshire*, plaintiffs would eventually have undergone surgery. Nevertheless, because Citgo's negligent conduct exacerbated Bankston's symptoms and triggered the need for the surgery, it is liable, like the defendant in *Abshire*, for all of the damages associated with the surgery, not just a portion thereof.

---

[4]This case also was complicated by a minor car accident subsequent to the accident at issue.

The trial court found that medical expenses, lost wages, and general damages associated with the surgery amounted to over $50,000.00. Because $50,000.00 is the maximum amount of damages this court can award to this plaintiff, we increase the trial court's award to Bankston by $6,708.00.

The case of Larry Thomas is a little different. The trial court found that Thomas had difficulties controlling his diabetes after the exposure and that "some long term sleep and rash issues were all that were aggravated by this spill." Thus, the trial court divided Thomas's damages into those associated with the exposure and those associated with his pre-existing/co-occurring conditions, awarding the entirety of damages associated with the exposure and twenty percent of damages associated with the aggravation of the pre-existing conditions.

Thomas testified that he did not have any pre-existing sleep and rash issues. Dr. Barry Levy, the plaintiffs' expert, testified that the exposure to the slop oil *caused* Thomas' sleep and rash problems. Thus, this court presumes that the aggravation damages the trial court awarded were for the aggravation of Thomas's diabetes. Thomas testified that he had his diabetes under control before the exposure. After the exposure, Thomas testified he had difficulties controlling his diabetes and had to change his medicine accordingly. After six months, Thomas went back to the medication he used before the exposure. The trial court also had Dr. Brian Barrilleaux's general statement that an exposure to noxious fumes can influence diabetes control. Nevertheless, Dr. Levy, the plaintiffs' expert, testified that he could not make a determination as to whether Thomas' increased difficulty in controlling his diabetes after the exposure was related to the exposure.

Thus, the record evinces some causation issues. The trial court appears to have resolved those in favor of Thomas. Plausibly, based on Dr. Levy's testimony,

12

that decision was manifestly erroneous. Yet, Citgo chose not to answer this appeal and, instead, asked this court to affirm the trial court's judgment on the quantum of damages, maintaining that the award was within the trial court's discretion.[5]

Based on these considerations, while this court does not increase Thomas's damages associated with the aggravation of his pre-existing condition because of serious causation issues, we do not reduce that award either because of Citgo's failure to answer this appeal.

The trial court awarded Charles Hardy over $50,000.00 in damages. The trial court then reduced the award to $50,000.00, the maximum allowed in this case. Because this court cannot increase Hardy's award and because Citgo did not answer the plaintiff's appeal requesting a reduction in damages, we do not consider whether the trial court erred with respect to this plaintiff.

**B) The Trial Court's Award of the Pain and Suffering Damages**

"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La.Civ.Code art. 2324.1. The trial courts' discretion in assessment of damages is substantial and is entitled to great deference on review. *Guillory*, 16 So.3d 1104.

When an appellate court reviews damage awards, its role is not to decide what is an appropriate award, but rather to review the trial court's exercise of its discretion. *Id.* During this review, an appellate court must not re-weigh evidence or

---

[5]Citgo maintains a separate appeal in which it asserts that the trial court erred by finding that plaintiffs sustained their burden of proving causation. Nevertheless, that appeal deals with causation issues as to all of the plaintiffs. In other words, Citgo argues that none of the symptoms experienced by the plaintiffs was due to its negligence, not that Citgo's negligence did not cause a particular symptom of a particular plaintiff.

The issue in this case is whether this court should *increase* the quantum of damages the trial court awarded. If Citgo wanted to have the judgment of the trial court "modified, revised, or reversed in part," it should have filed an answer to *this* appeal. La.Code. Civ.P. art. 2133.

13

substitute its own factual findings. *Id.* Thus, it is only when the award is past that which a reasonable trier of fact could award "for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.* at 1117 (quoting *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)).

The trial court's assessment of the damages may be disturbed only after an appellate court determines that the record clearly reveals the trial court abused its discretion. *Id.* Once this court finds an abuse of discretion, it may lower or raise the award "to the highest (or lowest) point which is reasonably within the discretion." *Guillory*, 16 So.3d at 1117 (citations omitted).

### *1) Whether the Trial Court Abused its Discretion*

This court finds that the trial court abused its discretion with respect to the following plaintiffs: Arabie, Buckelew, Giovanni, Miller, and Richard. The trial court found that the exposure-caused symptoms of these plaintiffs lasted one year or longer. Yet, the trial court awarded these plaintiffs essentially the same amount in pain and suffering damages as it did to the other plaintiffs whose symptoms were significantly shorter in duration.[6]

In addition to the symptoms experienced by other plaintiffs such as burning eyes, dizziness, and nausea, the trial court found that Arabie suffered from

---

[6]In their brief, the plaintiffs argue that the trial court was inconsistent in its findings of fact by stating that the "effects were short term, approximately one to three months," and, at the same time, finding that several of the plaintiffs suffered from the effects of the spill for much longer periods and awarding medical expense damages accordingly. We do not find this inconsistent because when the trial court refers to the effects which were "short term, approximately one to three months," it most likely refers to the effects of the *spill*, the noisome odor, for example, and not to the plaintiffs' *injuries*. Thus, we need not address the plaintiffs' assertions that the trial court awarded special damages without awarding the corresponding general damages.

diarrhea for one year and generally felt ill for six months. Arabie received only $5,000.00 for his pain and suffering. We conclude that this award was abusively low.

The trial court found that Buckelew, in addition to other symptoms, experienced a sore throat, headache, and weakness for ten to eleven months. The trial court also concluded that Buckelew's "pre-existing high blood pressure and diabetes were aggravated" and that he "returned to his baseline state of health as of May 2007," i.e., almost a year after the spill. Nevertheless, in the very next sentence the trial court wrote "[t]he Court was not satisfied that an aggravation of Mr. Buckelew's pre-existing conditions occurred." We are befuddled by these conflicting assertions. Nevertheless, irrespective of whether Buckelew's diabetes and high blood pressure were aggravated, this court finds that $5,000.00 for the pain and suffering associated with eleven months of sore throat, headache, and weakness is abusively low.

The trial court found that Giovanni, in addition to the other symptoms, experienced headaches and sinus problems for a year. The court also found that he had difficulties with his sense of smell at the time of the trial. This court finds abusively low the award of $5,000.00 for the pain and suffering associated with the inability to smell for over two years and headaches and sinus problems for one year.

In addition to the other, more transitory symptoms, Miller, at the time of the trial, continued to suffer from sinus problems and blistering and peeling of the hand that came into contact with the slop oil. This court finds the award of $5,000.00 for the pain and suffering associated with these injuries abusively low.

The trial court found that Richard, in addition to a rash, diarrhea, sore throat, nausea, fatigue, acne, sinus problems, and a cough that lasted anywhere from two to six months, experienced severe headaches for seven months and shortness of

15

breath for one year. We find that the award of $5,000.00 for these long-lasting symptoms was abusively low.

We find the awards to the rest of the plaintiffs to be somewhat low. Nevertheless, given the trial court's vast discretion, they are not abusively so. This is because other plaintiffs' symptoms, unlike the symptoms of Arabie, Buckelew, Giovanni, Miller, and Richard that lasted close to a year or longer, were significantly shorter in duration and milder in intensity.

### 2) The Lowest Point of Award Which Was Reasonably Within the Trial Court's Discretion

While commenting that the award of general damages was "at the low end of the spectrum," an appellate court affirmed a jury award of $100.00 to $3,000.00 to five bellwether plaintiffs exposed to natural gas, who "were only inconvenienced for a very short period of time," and who suffered minimal physical and mental injury such as nausea and headaches. *Rivera v. United Gas Pipeline Co.*, 96-502, 96-503, 97-161, p. 13 (La.App. 5 Cir. 6/30/97), 697 So.2d 327, 337, *writs denied*, 97-2030, 97-2031, 97-2032, 97-2034 (La. 12/12/97), 704 So.2d 1196, 1197.

Similarly, an appellate court affirmed the trial court's award of $500.00 to $2,000.00 to the plaintiffs who "suffered some level of inconvenience," but who did not suffer "any serious injury" because of their exposure to water contaminated by oil, grease, and other contaminants. *Doerr v. Mobil Oil Corp.*, 04-1789, p. 9 (La.App. 4 Cir. 6/14/06), 935 So.2d 231, 237, *writ denied*, 06-1760 (La. 11/3/06), 940 So.2d 664.

On the other hand, an appellate court affirmed an award of $20,000.00 for pain and suffering where the plaintiff suffered nausea, eye and throat irritation for three days but, at the time of the trial, continued to experience dizziness as a result

of his exposure to the burning railroad tank car with a leaking butadiene tank. *In re New Orleans Train Car Leakage Fire Litig.*, 00-1919 (La.App. 4 Cir. 4/20/05), 903 So.2d 9, *writ denied*, 05-1297 (La. 2/3/06), 922 So.2d 1171. In the same case, the court affirmed an award of $15,000.00 for the pain and suffering to the plaintiff who suffered eye irritation, choking, and nausea for some days, but continued to suffer from skin irritation at the time of the trial. *Id*.

Relying on the above jurisprudence, this court finds that the lowest award which was reasonably within the trial court's discretion for Arabie's injuries, given his experience of diarrhea for one year and general feeling of being ill for six months, is $12,500.00. Thus, we increase Arabie's total award to $45,912.00.

The lowest award which was reasonably within the trial court's discretion for Buckelew's injuries, given his suffering from sore throat, headache, and weakness for ten to eleven months, and a possible aggravation of his diabetes, is $10,000.00. Thus, we increase Buckelew's total award to $45,350.00.

The lowest award which was reasonably within the trial court's discretion for Giovanni's injuries, given his ongoing inability to smell and one year of headaches and sinus problems, is $10,000.00. Thus, we increase Giovanni's total award to $43,310.65.

The lowest award which was reasonably within the trial court's discretion for Miller's injuries, given his ongoing sinus problems and blistering and peeling of his hand, is $10,000.00. Thus, we increase Miller's total award to $43,030.00.

The lowest award which was reasonably within the trial court's discretion for Richard's injuries, given his severe headaches for seven months and

shortness of breath for one year, is $7,500.00.  Thus, we increase Richard's total award to $40,370.00.

V.

## **CONCLUSION**

The plaintiffs' damage awards are amended and, as amended, affirmed. Costs of this appeal are assessed to Citgo.

**AMENDED AND, AS AMENDED, AFFIRMED**.