STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-104

SHAWN CORMIER, ET AL.

VERSUS

CITGO PETROLEUM CORPORATION, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-2787
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

                                                                    **AFFIRMED.**

**Robert E. Landry**
**Kevin P. Fontenot**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry**
**901 Lakeshore Drive, Suite 900**
**Lake Charles, LA 70601**
**(337) 433-9436**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **CITGO Petroleum Corporation**

**Kirk Albert Patrick, III**
**Donahue, Patrick & Scott**
**450 Laurel St., Suite 1600**
**Baton Rouge, LA 70801**
**(225) 214-1908**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **R & R Construction, Inc.**

Wells Talbot Watson
Jake D. Buford
Bagget, McCall , Burgess, Watson & Gaughan
P. O. Drawer 7820
Lake Charles, LA 70605-7820
(337) 478-8888
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Farren Wayne McClelland
    Tyrone Whotte
    Joshua David Monceaux
    Shawn Cormier
    David Paul Savoie
    Matthew Aaron Fruge
    Wilber Joseph Istre
    Chris Robert LaBouve

Marshall Joseph Simien, Jr.
Simien Law Firm
2129 Fitzenreiter Road
Lake Charles, LA 70601
(337) 497-0022
COUNSEL FOR DEFENDANT/APPELLANT:
    CITGO Petroleum Corporation

Richard Elliott Wilson
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Joshua David Monceaux
    David Paul Savoie
    Farren Wayne McClelland
    Chris Robert LaBouve
    Wilber Joseph Istre
    Tyrone Whotte
    Shawn Cormier
    Matthew Aaron Fruge

Craig Isenberg
Kyle W. Siegel
Joshua O. Cox
Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.
909 Poydras, 24th Floor
New Orleans, LA 70112
(504) 589-9700
COUNSEL FOR DEFENDANT/APPELLANT:
    CITGO Petroleum Corporation

**EZELL, Judge.**

This appeal involves another group of Plaintiffs who were affected by the slop oil release from the CITGO refinery in Lake Charles on June 19, 2006. These particular seven Plaintiffs were working in different capacities at the Calcasieu Refining Company. After several days of trial in January, 2016, before a judge, the trial court ruled that the Plaintiffs' injuries were caused by the slop oil release. The trial court then awarded damages to the individual Plaintiffs based on their particular injuries. CITGO Petroleum Corporation appeals the award of damages to the Plaintiffs claiming they were an abuse of discretion and should be reduced.

### FACTS

On June 19, 2006, CITGO experienced a slop oil release from its Wastewater Treatment Unit. Slop oil is the waste product that comes from all over CITGO's refinery. Approximately four million gallons of slop oil was released due to an overflow in the stormwater tanks, and about one-third of that reached the Calcasieu River. Seventeen million gallons of hazardous wastewater was released, with a significant amount of wastewater also reaching the Calcasieu River.

At the time of the spill, CITGO's Material Safety Data Sheet required minimum protective equipment of safety goggles or glasses, a rain coat or chemical suit, and fresh air. Many hazardous chemicals are contained in slop oil, including benzene, which has been known to cause cancer at very low concentrations. Polyaromatic hydrocarbons are also a component of slop oil and are also hazardous to one's health.

Calcasieu Refinery is located downriver from CITGO. Fifteen days after the release, heavy oil was still located around Calcasieu Refinery. The seven Plaintiffs in the present case were working at the Calcasieu Refinery at the time of the spill.

Not all of the Plaintiffs were working for the same employer at the time, but many of their symptoms following exposure to the spill were very similar.

A trial was held in January 2016. After trial, the trial judge found that "the slop oil spill from the Waste Water [sic] Treatment Unit . . . and storage facility surrounded the work area of the Calcasieu Refinery." "[C]lean up lasted approximately two months and for the most part, the plaintiffs were exposed on a daily basis." Finding that the Plaintiffs' injuries were caused by the slop oil spill, the trial judge further stated:

> Taking the evidence as a whole, the Plaintiffs have established that more probably than not, the admitted negligence of the spill was a cause-in-fact of their various injuries. While the symptoms varied for each Plaintiff, the related symptoms included health issues identified on CITGO's own Material Safety Data Sheet . . . . All of the Plaintiffs were examined by Dr. Robert Looney, and his opinion based on a reasonable medical probability is that all of the Plaintiff's [sic] symptoms were a result of their exposure.

The trial judge then went on to award damages to each individual Plaintiff as follows:

David "Shawn" Cormier
| | |
|---|---|
| Medical Expenses | $428.00 |
| General Damages (pain and suffering) | $24,500.00 |
| General Damages (fear of developing disease) | $10,000.00 |
| General Damages (loss of enjoyment of life) | $5,000.00 |
| Total | $39,928.00 |

Farren Wayne McClelland
| | |
|---|---|
| Medical Expenses | $280.00 |
| General Damages (pain and suffering) | $25,000.00 |
| General Damages (fear of developing disease) | $15,000.00 |
| General Damages (loss of enjoyment of life) | $7,500.00 |
| Total | $47,780.00 |

Christopher LaBouve
| | |
|---|---|
| Medical Expenses | $367.00 |
| General Damages (pain and suffering) | $21,000.00 |
| General Damages (fear of developing disease) | $15,000.00 |
| General Damages (loss of enjoyment of life) | $5,000.00 |
| Total | $41,367.00 |

Matthew Joseph Fruge[1]

| | |
|---|---|
| Medical Expenses | $455.00 |
| General Damages (pain and suffering) | $38,500.00 |
| General Damages (fear of developing disease) | $15,000.00 |
| General Damages (loss of enjoyment of life) | $5,000.00 |
| Total | $58,955.00 |

Tyrone Hollis Whotte

| | |
|---|---|
| Medical Expenses | $1,002.00 |
| General Damages (pain and suffering) | $21,000.00 |
| General Damages (fear of developing disease) | $10,000.00 |
| General Damages (loss of enjoyment of life) | $5,000.00 |
| Total | $37,002.00 |

David Paul Savoie

| | |
|---|---|
| Medical Expenses | $567.00 |
| General Damages (pain and suffering) | $24,500.00 |
| General Damages (fear of developing disease) | $15,000.00 |
| General Damages (loss of enjoyment of life) | $7,500.00 |
| Total | $47,567.00 |

Joshua David Monceaux

| | |
|---|---|
| Medical Expenses | $467.00 |
| General Damages (pain and suffering) | $55,000.00 |
| General Damages (fear of developing disease) | $15,000.00 |
| General Damages (loss of enjoyment of life) | $10,000.00 |
| Total | $80,467.00 |

CITGO then filed the present appeal complaining about the amount of the award of general damages to each of the Plaintiffs.

## DAMAGES

CITGO claims that the trial judge abused her discretion in her awards of general damages to each of the Plaintiffs because the awards were significantly higher than the awards previously affirmed by this court in *Arabie v. CITGO Pet. Corp.*, 10-334 (La.App. 3 Cir. 10/27/10), 49 So.3d 985, *writ denied*, 10-2618 (La. 5/4/12), 88 So.3d 449, and *Arabie v. CITGO Pet. Corp.*, 15-324 (La.App. 3 Cir.

---

[1] The petition refers to "Matthew Aaron Fruge" while the judgment and briefs on appeal refer to "Matthew Joseph Fruge." Therefore, we refer to Plaintiff as "Matthew Joseph Fruge" for in this opinion.

10/7/15), 175 So.3d 1180, *writ denied*, 15-2040 (La. 1/8/16), 184 So.3d 694. CITGO also claims that the Plaintiffs' awards were grossly out of proportion to the medical expenses they incurred as a result of their exposure to the slop oil. CITGO also argues that the Plaintiffs' damages were calculated using a mathematical formula proposed by Plaintiffs.

"General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty." *Bouguet v. Wal-Mart Stores, Inc.*, 08-309, p. 4 (La. 4/4/08), 979 So.2d 456, 458.

> The standard of review applicable to a general damage award is the abuse of discretion standard. The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case.
>
> Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Prior awards, however, are only a guide.

*Id.* at 459 (citations omitted) .

Therefore, we will first look at the particular injuries these particular Plaintiffs faced as a result of their exposure to the CITGO slop oil release in 2006. Only if we find an abuse of discretion in the awards for their injuries, will we then resort to a review of the awards in the prior cases before this court as urged by CITGO.

4

Dr. Robert Looney examined all the Plaintiffs. At the time he practiced in the fields of general, occupational, and environmental medicine. The timing of the onset of the symptoms and similarity of symptoms was very strong evidence that the release of the slop oil by CITGO caused injury to the Plaintiffs. He recognized that the Plaintiffs had normal lab and test results but explained that the normal results only helped rule out other causes for the symptoms the Plaintiffs were experiencing.

Most of the Plaintiffs experienced symptoms for about half a year with the exception of Mr. Monceaux who experienced symptoms for almost two years. While Dr. Looney agreed that the Plaintiffs returned to their baseline health and that most of the Plaintiffs would have no long-lasting effects from the exposure, he explained that there is still a possibility that one or more of them could have some future issues that might develop as a result of the exposure. This is due to the fact that the Plaintiffs were exposed to a toxic substance which contained benzene, a well-known carcinogen. Dr. Looney stated that there is no treatment for benzene exposure.

The evidence in the record revealed that the individual Plaintiffs suffered with following problems following their exposure to the slop oil release.

Shawn Cormier

Mr. Cormier was a mechanic for Philip Services Corporation (PSC), an environmental cleanup company and was sent by PSC to Calcasieu Refinery to help clean up the oil off the boats, rocks, barges, and docks. He was out there for thirteen days. Mr. Cormier worked eighteen hours the first day. He testified that there was a very strong smell of a mixture of chemicals and a muggy odor, which lasted the entire job. He wore a slicker suit, rubber boots, and rubber gloves.

However, he did get slop oil on himself when he changed into his regular clothes. He was not given a respirator until the middle of the job.

Mr. Cormier experienced sinus headaches and allergy and sinus problems for six to seven months after the exposure. He also had dry skin, redness on his arms, and could not sleep at night. He also experienced fatigue. He did not want to get up and go to work. Mr. Cormier stated that he had none of these problems before the exposure to the slop oil. As a result of his exposure, he is afraid he might get cancer in the future.

<u>Farren Wayne McClelland</u>

Mr. McClelland worked for Thermal Insulation installing scaffolding at Calcasieu Refinery at the time of the slop oil release. He could smell a strong chemical smell the whole time he was out there. As a result of his exposure to the slop oil, he had headaches, trouble sleeping, sinus problems, burning eyes, nausea and vomiting, diarrhea, dizziness, and exhaustion. Mr. McClelland had none of these issues prior to his exposure to the slop oil and experienced these problems for nine to ten months after his exposure.

He had to wake up in the mornings and force himself to go to work. It was difficult for him to perform tasks at work. Mr. McClelland was concerned about his future health due to his exposure to the slop oil and does not want his family to watch him die from cancer.

<u>Christopher LaBouve</u>

At the time of the slop oil release, Mr. LaBouve was working for Ron Williams Construction at Calcasieu Refinery as general foreman. His first encounter with the release was when he turned onto Big Lake Highway and he could smell a petroleum-like smell. He had no symptoms before the slop oil

release, but after the release, he suffered with headaches, sinus problems, burning eyes, burning nose, dizziness, nausea, and vomiting for six months. The sinus problems made it hard to sleep at night and hard to get through the work day. Headaches made it hard for him to do his job.

Mr. LaBouve testified that he was worn out in the evenings when he got home and just wanted to sleep. He couldn't help his wife or do his chores. He knows he was exposed to chemicals that cause cancer which is one of the biggest fears of his life because his stepfather recently died from cancer.

Matthew Joseph Fruge

Mr. Fruge worked for PSC cleaning up the slop oil at Calcasieu Refinery at the time of the slop oil release. He noticed a strong chemical and oil smell at the time. Mr. Fruge worked at Calcasieu Refinery for a week-and-a-half to two weeks. He suffered with fatigue, problems sleeping at night, coughing, sinus problems, and diarrhea. Mr. Fruge also had shortness of breath which lasted eleven months. His fatigue and sleeping issues lasted six to seven months.

Mr. Fruge explained that he wanted to sleep all the time because he was not getting any rest. He also was concerned about getting cancer in the future.

Tyrone Hollis Whotte

Mr. Whotte was building scaffolding for Thermal Insulation at Calcasieu Refinery at the time of the slop oil release. He testified that there was an ongoing smell that lasted several weeks to a month. He experienced nausea and vomiting the first day. Mr. Whotte also suffered with dizziness, severe headaches, and sinus problems, in addition to insomnia. The sinus issues and headaches lasted six to seven months. These problems affected his ability to perform his daily activities. He too has major concerns about his future health due to his exposure to slop oil.

David Paul Savoie

At the time of the slop oil release, Mr. Savoie was working for Thermal Insulation at Calcasieu Refinery erecting scaffolds and operating a fork lift. He remembers a strong odor in the air. He experienced headaches worse than he had experienced in the past, trouble breathing, sinus problems, dizziness, nausea, anxiety, and depression. He experienced these issues for about seven months.

As a result of these issues, Mr. Savoie had a lot of family issues and could not sleep. He missed four days of work. Additionally, Mr. Savoie had a cousin who contracted leukemia from exposure to Benzene, so he is concerned about getting cancer also.

Joshua David Monceaux

Mr. Monceaux worked for Thermal Insulation at Calcasieu Refinery at the time of the slop oil release. He testified that he smelled an oily smell when he went to work on Monday morning. At the end of the day, he was sent to CITGO to build a scaffold and saw oil inside the levy where it had spilled out of the tank. He was not provided with a respirator when he went to CITGO.

The smell lasted a little more than a month and caused headaches, nausea, sinus problems, shortness of breath, sleep issues, and fatigue. The headaches and sinus problems lasted two years.

Mr. Monceaux testified that he had none of these problems before the slop oil release. Additionally, he was active before the release but tired all the time after the release.

Mr. Monceaux testified that he is concerned about his future health because he knows slop oil exposure can cause leukemia. His sister died of leukemia and it is something he does not want to go through.

While the awards are on the high end for the injuries suffered by the Plaintiffs, we cannot say that the amounts awarded by the trial judge were an abuse of her discretion. Her reasons for judgment indicated that she considered each individual case and awarded damages accordingly. Therefore, there is no need for us to review awards made in other cases.

We also do not find the awards unreasonable because they are grossly disproportionate in relation to the medical expenses incurred. In *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, the supreme court was faced with a situation in which a fact finder determined that a defendant was legally at fault for a plaintiff's injuries and liable for medical expenses incurred, but declined to make an award for general damages. In addressing this issue, the supreme court had to determine whether the awards were inconsistent and whether the fact finder abused its discretion. The supreme court determined that it is possible that a plaintiff may prove entitlement to recovery of certain medical costs, yet fail to prove that he has suffered any general damages as a result of defendant's fault such that an abuse of discretion by the trier of fact has not occurred.

Obviously, there is not necessarily a connection between an award of medical expenses and an award of general damages. It depends on the facts of each case. As such, the present case is clearly one in which there are evidently injuries that present many objective symptoms that lasted from six months to twenty-two months. Medical testimony necessarily confirmed the Plaintiffs' symptoms were caused by exposure to the release. As testified to by Dr. Looney, only time would relieve the symptoms experienced by the Plaintiffs. No medical treatment would help. Therefore, medical expenses would be low in comparison to the general damages suffered by the Plaintiffs.

We do not find that the trial court's awards of general damages to the Plaintiffs were an abuse of discretion in comparison to the awards of medical damages when only time would ease the many symptoms and problems experienced by the Plaintiffs.

Finally, CITGO argues the trial judge abused her discretion in her award of physical pain and suffering damages because she used a mathematical formula of $3,500.00 a month for five of the seven plaintiffs as suggested by Plaintiffs' counsel in closing arguments.

The use of a mathematical formula by the trial court judge is mere speculation on the part of CITGO. The trial judge set forth specific reasons as to the award of damages made to each individual Plaintiff. There is no indication she used a mathematical formula. We find no merit to CITGO's argument and therefore, find no abuse of discretion in the trial court's award of damages.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to CITGO.

**AFFIRMED.**