STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-979

MARIA MONTE, ET AL.

VERSUS

STATE FARM MUTUAL AUTOMOBILE INS. CO., ET AL.

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 91883-G
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.**

Kevin S. Frederick
James P. Doherty, III
1025 Coolidge Blvd.
P.O. Box 52880
Lafayette, LA  70505
(337) 269-5143
**ATTORNEYS FOR PLAINTIFFS/APPELLANTS**
   Maria Monte, Glenn Monte and Amanda Monte

Terry Rowe
Rowe & Middleton
P.O. Box 3323
Lafayette, LA  70502
(337) 232-4474
**ATTORNEY FOR DEFENDANTS/APPELLEES**
   Brent M. Turner and State Farm Mutual Automobile Ins. Co.

Louis C. Lacour, Jr.
Adams & Reese, L.L.P.
710 Poydras Street, Suite 4500
New Orleans, LA  70139
(504) 581-3234
**ATTORNEY FOR DEFENDANTS/APPELLEES**
   Ray Chevrolet-Olds, Inc., John B. Love, and Granite State Insurance Company

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This personal injury lawsuit arises out of a May 5, 2009 automobile accident that occurred on Highway 167 South between Maurice and Abbeville. On that date, Plaintiff, Maria Monte, who was the manager of a Burger King restaurant in Abbeville, was picking up supplies for her restaurant.

Mrs. Monte was driving her Chevrolet Trail Blazer in a southerly direction in the right lane of Hwy. 167, with her cruise control set at 55 MPH. Behind Mrs. Monte, in the same lane of Hwy. 167 was John Love, in his Chevrolet Silverado pickup truck. As Mrs. Monte approached a median crossover, Mr. Love attempted to pass her in the left, passing lane. At the same time, stopped in the median crossover, was a vehicle driven by Brent Turner, who had been driving north on Hwy. 167 in the opposite direction.

Apparently, Mr. Turner accidently placed his foot on both the brake pedal and accelerator, causing his vehicle to creep into the southbound, right lane of Hwy. 167. At this time, Mr. Love, who had begun passing Mrs. Monte in that lane of travel, saw Mr. Turner's vehicle entering the lane and realized he would not be able to continue in that lane. In response to this, Mr. Love abruptly switched into the southerly, right lane of travel. Upon switching lanes, Mr. Love stated the right tires of his vehicle encroached onto the shoulder of the highway. Mr. Love then applied his brakes and moved his truck fully back onto the right lane of travel. Upon fully re-entering the right lane, Mr. Love immediately applied his brakes and then attempted to accelerate his vehicle. At this moment, Mrs. Monte's vehicle crashed into the rear of Mr. Love's truck.

Mrs. Monte testified, upon seeing Mr. Love's swerve his vehicle into her lane of travel and onto the shoulder, she hit her brakes to disengage her cruise

3

control. However, she was unable to stop before colliding with the rear of Mr. Love's vehicle.

There was a dispute as to whether Mrs. Monte's vehicle struck Mr. Love's vehicle twice. Mrs. Monte denied she struck Mr. Love's vehicle twice. Mr. Love testified that Mrs. Monte's SUV initially struck his vehicle immediately after he reestablished his vehicle fully in the right lane of Hwy 167, just as he was beginning to accelerate after having avoided the hazard created by Mr. Turner's vehicle creeping into the left lane of travel. Mr. Love further stated he came to a stop only after and because Mrs. Monte initially rear-ended him; and after he stopped, Mrs. Monte's vehicle struck his truck a second time.

As a result of the accident, Mrs. Monte suffered a herniated disc in her neck. She underwent extensive treatment and eventually had an interior cervical discectomy and fusion on February 11, 2010. Two years later, after enduring severe, constant pain, she underwent a four level cervical decompression and fusion on May 21, 2012.

Mrs. Monte filed a suit for the damages she endured as a result of the accident. Also joining the suit were her husband, Glenn Monte, and her daughter, Amanda Monte, who sought damages for their loss of consortium. Named as defendants were John Love, Ray Chevrolet-Olds, Inc., Mr. Love's employer, and the general and excess liability insurers of Ray Chevrolet-Olds. At the time of the accident, Mr. Love was in the course and scope of his employment, thus triggering Ray Chevrolet-Old's vicarious liability. Also named as defendants were Brent Turner and State Farm, the liability insurer of Mr. Turner's vehicle.

The matter was tried by a jury on April 8-11, 2013. The jury returned a verdict finding Brian Turner 90% at fault, Maria Monte 10% at fault and John Love free from fault. Maria Monte was awarded special damages of $300,000.00 and general damages of $200,000.00. No awards for loss of consortium were

made to Glenn Monte or Amanda Monte.  A judgment reflecting the jury's verdict was executed and made final.  Maria, Glenn and Amanda Monte appealed the judgment, asserting the following assignments of error:

> (1)  During jury selection, the trial court erred in overturning the challenge for cause of a juror;
>
> (2)  The trial judge failed to instruct the jury on the relevant case law interpreting application of the relevant statutes from the Louisiana Highway Regulatory Act;
>
> (3)  The jury erred in assigning no fault to John Love;
>
> (4)  While instructing the jury, the trial judge failed to explain the elements of general damages to the jury;
>
> (5)  When drafting the jury verdict form, the trial court failed to divide any of the elements of general damages;
>
> (6)  When drafting the jury verdict form, the trial court failed to divide any of the elements of special damages;
>
> (7)  The jury erred in only awarding $300,000.00 in special damages;
>
> (8)  The jury erred in only awarding $200,000.00 in general damages;
>
> (9)  The jury erred in failing to award loss of consortium awards to Glenn and Amanda Monte;

Brent Turner, and his insurer, State Farm, have answered the appeal and assert the trial court erred in its apportionment of fault.  They contend the jury erred in assessing 90% fault on Mr. Turner, in not assessing some portion of fault to Mr. Love and assessing only 10% fault to Mrs. Monte.

## ANALYSIS

### I.    *Jury Selection.*

In its first assignment of error, plaintiffs contend the trial court abused its discretion in refusing challenge for cause as to potential juror, Frank deGraauw, Jr. Plaintiffs note that during the jury selection process, Mr. deGraauw, acknowledged a personal relationship with the owners of Ray Chevrolet Olds, and stated at one point it would be "difficult" to do his duty as a juror.  Mr. deGraauw also

5

acknowledged he had been sued on the basis of vicarious liability as the owner of a company, the same position as Ray-Chevrolet Olds. Plaintiffs asked the trial court to excuse Mr. deGraauw for cause. The trial court denied the challenge for cause, and the plaintiffs then used one of their peremptory challenges on Mr. deGraauw to exclude him from the jury.

Plaintiffs note a juror may be challenged for cause "when the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial," or when the relations by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict." La.Code Civ.P. art. 1765(2) and (3).

In *Raymond v. Government Employees Ins. Co.*, 09-1327, p. 3 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, 1184, this court discussed the appellate review for denials of challenges for cause:

> A trial court has great discretion in ruling on challenges for cause and the appellate court should not disturb its ruling unless the *voir dire* as a whole indicates an abuse of discretion. *Bannerman v. Bishop*, 28,382 (La.App. 2 Cir. 7/2/96), 688 So.2d 570, *writ denied*, 96-2755 (La. 1/10/97), 685 So.2d 146. A prospective juror's friendship, acquaintance, or previous employment of an attorney on an unrelated matter does not necessitate the granting of a challenge for cause if the juror makes it clear that such a relationship would not affect his or her verdict. *In re Medical Review Panel on Behalf of Laurent*, 94-1661 (La.App. 1 Cir. 6/23/95), 657 So.2d 713.

While plaintiffs correctly note Mr. deGraauw expressed some trepidation that he might have "difficulty" applying the law to his friends in this case, he did state he would do his duty if he were selected for the jury. The trial court questioned Mr. deGraauw about any possible "difficulty" he might have:

THE COURT:     Okay. All right. So you're going to have some difficulty with it?

MR. DEGRAAUW:     Well, it would be difficult.

THE COURT:     You would rather not?

6

MR. DEGRAAUW:    I would rather not.

THE COURT:    But if it's your duty?

MR. DEGRAAUW:    If it's my duty, I would do it.

The trial court, aware that Mr. deGraauw acknowledged a friendship with one of the defendants, after further examination believed Mr. deGraauw would have been a fair juror. As to plaintiffs argument that Mr. deGraauw would have difficulty applying the law of vicarious liability due to his ownership of companies that had been sued in the past, it was revealed in further examination that Mr. deGraauw had worked for insurance companies and rehabilitation specialists in the past. In that capacity, Mr. deGraauw explained he had, on numerous occasions, worked on behalf of plaintiffs in personal injury cases.

Considering the broad discretion given to the trial judge in determining challenges for cause, we cannot say that the trial court abused that discretion in refusing the challenge for cause as to Mr. deGraauw. We also note that Mr. deGraauw was not a member of the jury, as plaintiffs used a peremptory challenge to excuse him. There has been no argument made by plaintiffs that they would have challenged another juror that was seated on the jury. Accordingly, we find no merit to this assignment of error.

## II.    *Jury Instructions on Statutes Governing Liability.*

In their second assignment of error, plaintiffs contend the trial court inadequately explained the law governing the issue of liability in this case. Specifically, plaintiffs argue "while instructing the jury on the duties of the parties, the trial judge failed to provide any instruction from the cases interpreting the statutes. Rather, he simply read the statutes from the Louisiana Highway Regulatory Act."

Trial courts are required to "instruct jurors on the law applicable to the cause submitted to them." La.Code Civ.P. art. 1792(B). Adequate jury instructions "fairly and reasonably point out the issues and ... provide correct principles of law for the jury to apply to those issues." *Adams v. Rhodia, Inc.*, 07-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804. "If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error." *Id*. Louisiana jurisprudence is well established that appellate courts must exercise great restraint before reversing a jury verdict because of erroneous jury instructions. *Id*. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. *Id.*

A reading of the record shows the trial judge reviewed, in detail, the statutory law that governed liability in this case to the jury. He noted his preference to read the statutes to the jury rather than read from cases which might have substantially different facts. We find no reversible error in the jury instructions made by the trial court in this case on the liability issues before the jury.

### III. *Jury's Finding of No Fault on Part of John Love.*

Next, plaintiffs argue the jury manifestly erred in finding Mr. Love free from fault in causing the accident. Plaintiffs contend the facts at trial established Brent Turner came to a full stop in the median crossover; thus Mr. Love was not required to abruptly switch lanes to avoid hitting Mr. Turner's vehicle. This, of course, is contrary to the version of facts presented by Mr. Love, who testified Mr. Turner's vehicle slowly moved into his lane of travel presenting him with a sudden emergency situation, requiring him to swerve quickly into the other lane to avoid hitting Mr. Turner's vehicle. Essentially, plaintiffs ask this court to accept the version of facts presented by Mr. Turner over the version of facts supplied by Mr.

Love. The jury obviously chose to accept Mr. Love's version, and we cannot find such a decision to be manifestly erroneous unless we find the credibility and factual determinations of the jury to be unreasonable. After a thorough review of the record, we find the jury's fact and credibility determinations to be reasonable.

Of particular note, the jury heard the testimony of Maria Monte, who was asked to read her written statement made just shortly after the accident. That statement read as follows:

> Heading south on 167 on the right side of highway. Cruise was set on 55. A white Silverado was on the left side. They had a silver vehicle crossing the median. Looked like he was not going to stop. So to avoid the accident, white Silverado swerved to miss it but cut across the highway. I then hit him from the back. Tried to avoid, but still hit him.

There was some questioning of Mrs. Monte by counsel for Mr. Turner at trial that much of this statement was what was told to her by Mr. Love. It was also brought out at trial that this version of events, which Mrs. Monte gave to law enforcement, was the same as that alleged in her petition. Certainly, this corroboration of Mr. Love's testimony may well have influenced the jury's ultimate conclusion that Mr. Love's actions were prompted by the sudden emergency created by Mr. Turner's vehicle.

Mr. Love argued to the jury that the "sudden emergency doctrine" insulated him from liability under the facts of this case. Our Louisiana Supreme Court, in *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 112-13, 262 So.2d 385, 389 (1972), discussed the sudden emergency doctrine:

> One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.

9

Thus, accepting the version of facts offered by Mr. Love and corroborated by Ms. Monte's written statement and petition, the jury was reasonable in finding Mr. Love free from fault.

We also find no merit to Mr. Turner and State Farm's argument that the trial court erred in its assessment of fault. Accepting the version of facts that Mr. Turner's vehicle came into Mr. Love's lane, which was reasonable on the jury's part, we cannot say there was any manifest error in assessing Mr. Turner with 90% fault. We also find no merit in the argument that the jury erred in only assessing 10% fault to Mrs. Monte. She was presented with the same sudden emergency that Mr. Love was due to the actions of Mr. Turner. We note the jury easily could have determined that Mrs. Monte was not at fault in causing the accident, for the same reasons it found relating to Mr. Love. However, it chose to cast her 10% at fault, and we certainly find nothing in the record to support raising that figure to a higher percentage.

## IV.    *Jury's Instruction on Elements of General Damages.*

In its fourth, fifth and sixth assignments of error, plaintiffs argue the trial judge committed reversible, legal error when he failed to instruct the jury on the elements of general damages and provided the jury with a verdict form that did not separate the elements of special and general damages.

In his final instructions to the jury, the trial judge addressed the subject of general damages as follows:

> General damages is the other kind of damages. If you find for the plaintiff and you do award special damages, you must also at least consider an award for general damages. What that means is you can't say, well, we're just going to – we're just going to give medical and lost income. We're not even going to look at anything else, or we're just going to give medical and lost income. You have to at least consider the damages I'm going to tell you. You don't have to give them, but you must at least consider them.
>
> So these are damages that can't be documented exactly. They can't be calculated mathematically. . . . So, while it may not be

10

possible to establish the exact amount of general damages, the plaintiff must still prove by the weight of the evidence that the damages claimed were actually sustained or will be sustained in the future. You must not award damages that are merely speculative, those that you think might have been suffered or might be suffered in the future.

Since the amount of these damages cannot be supported by exact evidence, like an invoice, you simply have to determine them by applying your experiences in life, your sound discretion, and your common sense.

The verdict form submitted to the jury included a provision for the specification of damages and provided the following heading: "What amount if any, in dollars and cents, will compensate the plaintiff for her injuries?" The verdict form then provided a blank for both special and general damages. After the term "Special Damages" a brief description of that type of damages was included in parentheses and provided: "(such as medical expenses past and future, loss of income, loss of future earning capacity)." Following the term "General Damages" on the jury verdict form was a similar description and provided: "(such as physical pain and suffering past and future, mental or emotional pain and suffering past and future, disability, disfigurement, loss of enjoyment of life)."

Plaintiffs maintain the instructions provided on the elements of damages "caused the jury's confusion and the erroneous awards." They further assert the "jury's confusion is obvious." In particular, plaintiffs take issue with the trial court's "refusal to instruct the jury on loss of enjoyment of life as requested by the [plaintiffs]." They maintain loss of enjoyment of life is separate from other general damages and cite the Louisiana Supreme Court case of *McGee v. A C And S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770. Plaintiffs misinterpret the supreme court's holding in *McGee*. That case held "loss of enjoyment of life is recoverable as a separate element of general damages that *may* be included as a separate item on a jury verdict form." *Id.* at 770. It did not require, as plaintiffs infer, that loss of enjoyment of life be listed as a separate item on the jury verdict form. Loss of

11

enjoyment of life was listed as an example of a type of general damages on the jury verdict form in this case.

Despite plaintiffs' arguments attacking the jury verdict form in this case, they have cited no statutory or jurisprudential support for their claim that the trial judge erred in not listing, individually, the separate elements of damages in this case. Louisiana Code of Civil Procedure Article 1812(C)(4) specifies what is to be included on a jury verdict form in a suit for personal injuries:

> (C) In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
>
> . . . .
>
> (4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.

While the setting forth of the individual elements of damage awards on the verdict form by the jury might well be helpful to a general understanding of how and why the jury awarded what it did and certainly would assist this court's duty to review such awards, it simply is not legally required. The verdict form in this case included the required listing for the quantification of special and general damages, which complies with the requirements of La.Code Civ.P. art 1812(C)(4). Thus, these assignments of error have no merit.

## V.    Jury's Award of Special Damages.

By this assignment of error, plaintiffs contend the jury's special damage award of $300,000.00 to Maria Monte was inadequate. They assert the jury's award did not account for any of Maria's loss of earning capacity and vastly undervalued her future medical expenses. As we discussed previously, the fact that the elements of special damages were not itemized on the jury verdict form,

while not legally deficient, does impair our ability to divine the exact amounts the jury awarded for the various categories of special damages.

It is well-settled that a jury is given great discretion in its assessment of quantum, both general and special damages. Louisiana Civil Code article 2324.1 provides: "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." Furthermore, the assessment of quantum, or the appropriate amount of damages, by a jury is a determination of fact, one entitled to great deference on review. *Wainwright v. Fontenot*, 00-492, p. 6 (La.10/17/00), 774 So.2d 70, 74. This supreme court has stated:

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trier of fact's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

*Perkins v. Entergy Corp.*, 00-1372 (La.3/23/01), 782 So.2d 606 (quoting *Canter v. Koehring*, 283 So.2d 716, 724 (La.1973)). Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. *Youn v. Maritime Overseas Corp., et al.*, 623 So.2d 1257, 1261 (La.1993).

Special damages are those which theoretically may be determined with relative certainty, including medical expenses and lost wages. *Kaiser v. Hardin*, 06-2092 (La.4/11/07), 953 So.2d 802. An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Kaiser*, 953 So.2d

13

at 810 (citing *Guillory v. Ins. Co. of North America*, 96-1084 (La.4/8/97), 692 So.2d 1029).

Initially, we note there was a vast disparity between the amounts each side's experts deemed necessary and warranted to compensate Maria for her injuries. We have reviewed in detail the expert testimony to evaluate what the jury may have considered in fashioning its award.

We agree with plaintiffs that the jury likely made no award for future loss of earning capacity. Plaintiffs presented the testimony of Dr. Steven Staires, who opined that Maria was not capable of returning to work and that was likely to remain the case for the foreseeable future. They also presented the testimony of a vocational rehabilitation expert who stated Maria was unable to perform the type of work she had previously done, which greatly restricted her employability. However, the jury also heard testimony that Dr. Patrick Juneau, who treated Maria following the accident and released her to return to sedentary employment on September 12, 2012 (approximately six months prior to the trial.) After Dr. Juneau's release to return to work, Maria did not return to treat with Dr. Juneau, but chose instead to change physicians to Dr. Ilyes Munshi, who then referred her to Dr. Staires.

Defendants also presented the testimony of Carla Seyler, accepted as an expert in vocational rehabilitation and life care planning, who tested Maria and reviewed all medical reports. Ms. Seyler also performed a labor market survey that found several, available jobs within Dr. Juneau's sedentary employment restrictions. The jury was also informed that Dr. Juneau had signed off on several jobs that were available to Maria.

The jury obviously accepted the testimony of Dr. Juneau and Ms. Seyler over that of plaintiffs' experts, credibility calls that are within the province of the

14

finder of fact. Thus, we cannot say the jury did not have a reasonable factual basis to find Maria was not entitled to an award for loss of future earning capacity.

As to future medical expenses, both sides presented widely divergent life care plans (which attempt to set a value for all future medical and life care needs). Plaintiffs presented a life care plan prepared by Dr. Neil Gorman, an expert in vocational rehabilitation. Mr. Gorman's plan totaled in excess of one million dollars. This included approximately $550,000.00 in housekeeping expenses, which included a maid five times per week until Maria was eighty-two (her life expectancy). Mr. Gorman also included nearly $30,000.00 in his life plan for a lifetime membership to a gym. Significant amounts for future medication were also included in the plan.

Defendants presented the testimony of its economics expert, Denis Boudreaux, who stated he had problems with Dr. Gorman's plan, believing it was "unreasonable" and not a reflection of her Maria's true medical condition. Ms. Seyler testified the extreme amount for household expenses was not warranted, as light household work was within the restrictions authorized by Dr. Juneau. The jury also heard the testimony of Dr. Juneau that Maria had reached maximum medical improvement by September 12, 2012. Dr. Juneau also believed it was in Maria's best interest to avoid taking any more narcotic medications. He opined that coping was her best option and recommended she participate in a coping skills program.

Ms. Seyler also prepared a life care plan, based on the medical recommendations of both Dr. Juneau and Dr. Staires. That plan totaled $69,694.00. It seems apparent the jury chose to accept Ms. Seyler's life care plan over that of Mr. Gorman. Although we may believe Ms. Seyler's plan to be on the low side (as we believe Mr. Gorman's was excessive), we cannot say the jury abused its vast discretion in that factual and credibility determination.

15

However, we do find the jury's award of $300,000 in special damages was abusively low because it chose to award an amount lower than the total of special damages acknowledged by defendants to be owed. Defendants' counsel acknowledged Maria was "entitled to her past medical," which was stipulated to be $210,880.78. While defendants disputed the much larger sum of past lost wages, its economics expert, Mr. Boudreaux, did state Maria endured lost wages in the amount of $79,000.00. Lastly, as set forth above, Ms. Seyler determined Maria was entitled to an award of $69,694.00 for her future medical and life care needs. Thus, defendants have acknowledged Maria's special damages to be $359,574.78, and we amend the jury's special damages award to so reflect.

## VI.    Jury's Award of General Damages.

A general damage award cannot be fixed with pecuniary exactitude. It is not our role, as an appellate court to decide what we may consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. An appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337 (La.1993); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993). Furthermore, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*. Moreover, on review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. *Ambrose v. New Orleans Police Department Ambulance Service*, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221). Reasonable persons may frequently disagree about the measure of damages

16

in a particular case, but "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn*, 623 So.2d at 1261.

Plaintiffs contend the $200,000.00 general damage award made to Maria was "wholly insufficient." They note she had back and neck problems which were initially treated with physical therapy. When that did not alleviate her problems, an anterior cervical discectomy was performed on her by Dr. John Cobb. Despite the surgery, Maria stated she realized little relief. Dr. Cobb then performed several cervical epidural steroid injections.

Dr. Cobb passed away in 2011, and Maria's care was transferred to Dr. Juneau. It was recommended that Maria undergo a cervical decompression surgery, which was performed by Dr. Juneau and Dr. Munshi. Maria stated she still suffered from pain and muscle spasms. She also stated she endured pain radiating into her left arm.

After Dr. Juneau released Maria to return to work in September of 2011, she sought treatment from Dr. Munshi, who referred her to Dr. Staires for pain management. Dr. Staires referred Maria back to physical therapy. He testified Maria will have ongoing pain and will need pain management for the foreseeable future.

Defendants note on September 12, 2011, Dr. Juneau found Maria was capable of returning to work and released her with a sedentary employment restriction. He also found she was at maximum medical improvement. He also believed she would no longer need to take narcotics, and that coping was her best option and recommended she participate in a coping skills program.

Plaintiffs also note Maria suffered a significant loss of enjoyment of life. Maria contends, due to her continuing pain, her life was seriously impacted and she

17

felt she was a burden to her family. Maria maintains she no longer enjoys a normal family relationship with her husband and children. She stated she can no longer attend her husband's concerts and requires assistance to perform many routine daily tasks.

The jury's assignment of quantum is entitled to great deference, and we cannot disturb an award if two permissible views of the evidence exist. While we recognize the jury's award might be viewed to be on the lower end of what is appropriate, it is not our role to substitute our view of the evidence for that of the jury's. Based upon the evidence in the record, the jury could have reasonably concluded $200,000.00 was an appropriate general damages award, and thus, did not abuse its discretion in that regard.

## VII. Loss of Consortium.

In their final assignment of error, Plaintiffs contend the jury manifestly erred in failing to award any damages for loss of consortium to both Glenn Monte and Amanda Monte. In *Creel v. St. Charles Gaming Co.*, 97-994, p. 11 (La.App. 3 Cir. 2/4/98), 707 So.2d 475, 481, this court discussed the requirements for proving a loss of consortium:

> In order to prove a claim for loss of consortium, a plaintiff must prove three things: (1) the liability of the defendant, (2) [the resultant] damages, and (3) his or her consequent loss of consortium damages. *Peck v. Wal-Mart Stores, Inc.*, 96-645 (La.App. 3 Cir. 11/6/96), 682 So.2d 974. Loss of consortium is more than just a loss of general overall happiness, it also includes love and affection, society and companionship, sexual relations, the right of performance of material services, the right of support, aid, and assistance, and felicity. *Detraz [v. Hartford Accident & Indemnity Co.*, 94-708 (La.App. 3 Cir. 12/7/94) ], 647 So.2d 576. The trier of fact is given much discretion in awards for loss of consortium and will not be overturned on appeal in the absence of manifest error. *Doucet v. Doug Ashy Bldg. Materials, Inc.*, 95-1159 (La.App. 3 Cir. 4/3/96), 671 So.2d 1148; *Lonthier v. Northwest Ins. Co.*, 497 So.2d 774 (La.App. 3 Cir.1986).

Glenn testified, due to his wife's injuries he was forced to take over much of the care of their adult, special needs son, Lance. He also testified due to his wife's

18

problems, their life and relationship was drastically altered. They no longer went on vacations or attended family reunions. Glenn, who was a musician, was forced to cancel several of his concerts to stay and care for Maria, who was very reluctant to leave the family home.

Maria's adult daughter, Amanda, testified her life changed dramatically after her mother's injuries. Amanda felt she was now the parent, taking over the cooking, cleaning and much of the caring for Lance. She also needed to assist her mother in many routine tasks, such as getting dressed and fixing her hair. Amanda testified she felt an enormous amount of pressure and stress to take care of her family. Even though she had completed school, Amanda did not attempt to find work due to her obligations at home.

Despite the testimony it heard, the jury chose to award no damages for loss of consortium to either Glenn or Amanda. We find this was clear error. There was no testimony elicited to refute that Maria's physical capabilities and emotional state significantly changed after the accident. It was not disputed that Maria did suffer significant problems following the accident. In closing arguments, counsel for defendants stated "Mrs. Monte was hurt. She had two surgeries. She has been in pain, she has suffered. *Her family has suffered.*" Furthermore, in discussing Amanda's situation in particular, counsel *for defendants* candidly stated "Amanda makes my heart hurt. She really has had it hard . . ."

Although we acknowledge the broad discretion given the jury in determining whether an award for loss of consortium is warranted, we find the jury was clearly wrong in finding plaintiffs failed to establish a loss of consortium herein. Therefore, after reviewing the jurisprudence for the lowest amount reasonably within the discretion of the factfinder, Glenn Monte is entitled to an award of $30,000.00 for his loss of consortium and Amanda Monte is entitled to an award of $50,000.00 for her loss of consortium.

**DECREE**

For the foregoing reasons, that portion of the judgment denying damages for Glenn Monte's and Amanda Monte's loss of consortium is reversed. Glenn Monte is awarded $30,000.00 for his loss of consortium and Amanda Monte is awarded $50,000.00 for her loss of consortium. The award of special damages is amended to raise that award from $300,000.00 to $359,574.78. In all other respects, the judgment is affirmed. Costs of this appeal are assessed one-third against plaintiffs, the Montes; one-third against Brent Turner and State Farm; and one-third against Ray-Chevrolet-Olds, John Love and Granite State Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.**