# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**15-324**

**CRAIG STEVEN ARABIE, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION**

*CONSOLIDATED WITH*

**15-325**

**RANDALL A. BIDDY, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION**

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, DOCKET NOS. 2007-2738 C/W 2007-3273**
**HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, James T. Genovese and John E. Conery, Judges.

**AFFIRMED.**

**Conery, J., concurs and assigns reasons.**

**Genovese, J., concurs for the reasons assigned by Conery, J.**

Wells T. Watson
Roger G. Burgess
Jake D. Buford
Baggett, McCall, Burgess, Watson & Gaughan
3006 Country Club Road
P.O. Drawer 7820
Lake Charles, LA  70605-7820
(337) 478-8888
**ATTORNEY FOR PLAINTIFFS/APPELLEES**
    Craig Steven Arabie, et al.


Richard E. Wilson
Cox, Cox, Filo, Camel & Wilson
723 Broad St.
Lake Charles, LA  70601
(337) 436-6611
**ATTORNEY FOR PLAINTIFFS/APPELLEES**
    Craig Steven Arabie, et al.


Robert E. Landry
Scofield, Gerard, Pohorelsky, Gallaugher & Landry
901 Lake Shore Drive, Suite 900
Lake Charles, LA  70601
(337) 433-9436
**ATTORNEY FOR DEFENDANT/APPELLANT**
    CITGO Petroleum Corporation


Craig Isenberg
Michelle M. Rutherford
Zachary I. Rosenberg
Barasso Usdin Kupperman Freeman & Sarver, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, LA  70112
(504) 589-9700
**ATTORNEY FOR DEFENDANT/APPELLANT**
    CITGO Petroleum Corporation

**COOKS, Judge.**

The plaintiffs in these two consolidated appeals are persons asserting injuries caused from a major oil and wastewater spill from Defendant's refinery. Liability for the cause of the spill is admitted by Defendant, but the amount of damages awarded to the fifteen named plaintiffs in this case is contested on appeal. For the following reasons, we find no abuse of the trial court's discretion in its awards, and we affirm.

## FACTS AND PROCEDURAL HISTORY

The claims in this consolidated appeal arise from an oil and wastewater spill that occurred on June 19, 2006, at Defendant, CITGO Petroleum Corporation's Calcasieu Parish refinery. As a consequence of a severe storm, the stormwater drainage and storage system (including the wastewater treatment facility) at CITGO's refinery was filled beyond available capacity and overflowed, resulting in a major oil spill. Over 21 million gallons of waste, including 17 million gallons of contaminated wastewater and 4.2 million gallons of slop oil escaped from the two existing wastewater storage tanks into an area around the tanks which was surrounded by levees or dikes. The oil spill, which was described by experts as "major" and "catastrophic," eventually contaminated over 100 miles of shoreline along the Calcasieu River and required several months to clean up.

A previous trial on the oil and wastewater spill was held with a different set of plaintiffs, who were employed by Ron Williams Construction, and working at the Calcasieu Refinery. The current plaintiffs in these consolidated appeals also were employees of Ron Williams Construction and worked at CITGO's Calcasieu Refinery. The trial with the first set of plaintiffs resulted in varying damage awards to the named plaintiffs, which amounts were the subject of an appeal to this court in *Arabie v. CITGO Petroleum Corp.*, 10-244 (La.App. 3 Cir. 10/27/10), 49 So.3d 529. This court affirmed the district court's ruling that plaintiffs had proved

their injuries were caused by CITGO's previously admitted negligence in allowing the spill. The Supreme Court granted review to determine whether the courts below erred as to the allocation of fault, in awarding damages for fear of future injury and in awarding punitive damages. Pertinent to this appeal, the supreme court held plaintiffs proved their damages were caused by the exposure to toxic chemicals contained in the oil spill and plaintiffs were entitled to damages for fear of contracting cancer. *Arabie v. CITGO Petroleum Corp.*, 10-2605 (La. 3/13/12), 89 So.3d 307. (For ease of reference, we will refer to the prior case as *Arabie 1*.) The supreme court reversed the trial court's award of $30,000.00 in punitive damages to each plaintiff.

The trial court in this case noted exposure was already established by this court's and the supreme court's finding in *Arabie 1*. CITGO also did not dispute that Plaintiffs suffered irritant symptoms from working around the area where the spill occurred while the oil was still present. Thus, the issues determined at trial were: (1) whether CITGO's actions were the proximate cause of each plaintiff's injuries, and (2) the extent of each plaintiff's damages, if any.

The trial court found, taking the evidence as a whole, Plaintiffs established that more probably than not, the admitted negligence of CITGO in allowing the spill was a cause-in-fact of their various injuries. In assessing damages, the trial court noted despite complaints to management, the Plaintiffs were reassured there was no risk and advised the slop oil was not dangerous. The trial court found this assurance from CITGO encouraged the plaintiffs to not seek initial medical evaluations for the first few months and exacerbated the symptoms they endured. The following damage awards were rendered by the trial court:

**Randall Biddy**

| | |
|---|---|
| Medical Expenses | $ 857.00 |
| General Damages – Pain and Suffering | $20,500.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |

|  |  |
|---|---|
| TOTAL | $36,357.00 |

**Tony Buckelew**

| | |
|---|---|
| Medical Expenses | $    502.00 |
| General Damages – Pain and Suffering | $14,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $29,502.00 |

**Allen Fontenot**

| | |
|---|---|
| Medical Expenses | $ 2,402.00 |
| General Damages – Pain and Suffering | $20,500.00 |
| General Damages – Fear of Developing Disease | $15,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $42,902.00 |

**Christopher Gass**

| | |
|---|---|
| Medical Expenses | $    660.00 |
| General Damages – Pain and Suffering | $10,250.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $25,910.00 |

**Michael Greer**

| | |
|---|---|
| Medical Expenses | $ 1,027.00 |
| General Damages – Pain and Suffering | $17,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $33,027.00 |

**Joshua Holland**

| | |
|---|---|
| Medical Expenses | $ 1,450.00 |
| General Damages – Pain and Suffering | $13,000.00 |
| General Damages – Fear of Developing Disease | $15,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $34,450.00 |

**Yates LeBlanc**

| | |
|---|---|
| Medical Expenses | $    660.00 |
| General Damages – Pain and Suffering | $10,000.00 |
| TOTAL | $10,660.00 |

**Dale Louvierre**

| | |
|---|---|
| Medical Expenses | $    810.00 |
| General Damages – Pain and Suffering | $17,500.00 |
| General Damages – Fear of Developing Disease | $15,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $38,310.00 |

**Dustin Miller**

| | |
|---|---|
| Medical Expenses | $    930.00 |
| General Damages – Pain and Suffering | $18,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |

| | | |
|---|---|---|
| General Damages – Loss of Enjoyment of Life | | $ 5,000.00 |
| TOTAL | | $33,930.00 |

**Morgan Olivier**

| | |
|---|---|
| Medical Expenses | $ 3,513.04 |
| General Damages – Pain and Suffering | $20,500.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $39,013.04 |

**Darren Romero**

| | |
|---|---|
| Medical Expenses | $ 1,645.94 |
| General Damages – Pain and Suffering | $16,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $32,645.94 |

**Willard Romero**

| | |
|---|---|
| Medical Expenses | $ 660.00 |
| General Damages – Pain and Suffering | $15,500.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $31,160.00 |

**Joshua Singer**

| | |
|---|---|
| Medical Expenses | $ 610.00 |
| General Damages – Pain and Suffering | $13,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 2,500.00 |
| TOTAL | $26,110.00 |

**Dustin Smith**

| | |
|---|---|
| Medical Expenses | $ 671.00 |
| General Damages – Pain and Suffering | $16,500.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $32,171.00 |

**Larry Stewart**

| | |
|---|---|
| Medical Expenses | $ 2,027.22 |
| General Damages – Pain and Suffering | $30,000.00 |
| General Damages – Fear of Developing Disease | $10,000.00 |
| General Damages – Loss of Enjoyment of Life | $ 5,000.00 |
| TOTAL | $47,027.22 |

All court costs were assessed to CITGO. A final judgment was signed on October 9, 2014. CITGO appealed the judgment solely on the grounds that the damages awarded were excessive and a stark departure from the awards handed out in *Arabie 1*. CITGO assigned the following assignments of error:

1. The district court abused its discretion in awarding more than $31,000 per plaintiff in general damages for minimal and intermittent health complaints which were, on average, three times more than the same district court awarded to what it described as a similar plaintiff group – workers at the same location with the same exposures, and the same basic health complaints.

2. The district court erred in awarding Mr. Stewart $10,000 for fear of developing a future disease in the absence of any evidence that he had such fears.

## ANALYSIS

This court in *Anthony v. Georgia Gulf Lake Charles, LLC*, 13-236, p. 8 (La.App. 3 Cir. 5/21/14), 146 So.3d 235, 251, *writ denied*, 14-2102 (La. 11/26/14), 153 So.3d 425, recently set forth the appellate standard of review for general damage awards:

> In awarding general damages, it is well settled the trier of fact is afforded great discretion. La.Civ.Code art. 2324.1; *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). An appellate court may only disturb a general damages award after an articulated examination of the facts discloses a clear abuse of discretion. *Miller v. LAMMICO*, 07-1352 (La. 1/16/08), 973 So.2d 693. While reasonable persons frequently can disagree with the quantum of general damages, the monetary award must have a reasonable relationship to the elements of proven damages. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

Before addressing the aspects of the awards to each plaintiff it finds objectionable, CITGO makes several general arguments concerning the trial court's awards.

CITGO contends the trial court's award of damages for loss of enjoyment of life (which were made to all but one plaintiff) were duplicative to the awards made for pain and suffering. However, the Louisiana Supreme Court in *McGee v. A C and S, Inc.*, 05-1036, p. 4 (La. 7/10/06), 933 So.2d 770, 775, addressed the appropriateness of general damage awards for both pain and suffering and loss of enjoyment of life:

Moreover, loss of enjoyment of life is conceptually distinct from other components of general damages, including pain and suffering. Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury. Loss of enjoyment of life, in comparison, refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury.... Given the conceptual difference between pain and suffering and loss of enjoyment of life, a separate award for loss of enjoyment of life is warranted and is not duplicative of the award for pain and suffering, if the damages resulting from the loss of enjoyment of life are sufficiently proven.

The law is clear that whether damages for loss of enjoyment of life are recoverable depends on the particular facts of each case and each individual plaintiff. The trial court's decision to make a separate general damage award for loss of enjoyment of life is not duplicative and well within its discretion provided said damages are sufficiently proven.

CITGO also points out that the plaintiffs in this case did not miss work. As plaintiffs note, there was never any allegation that the injuries they suffered from the exposure were so debilitating as to make them miss work. To the contrary, it was alleged the injuries suffered from the exposure made work and life much more difficult.

CITGO also argues many of the plaintiffs should have sought immediate treatment from their family physicians, but did not do so, opting instead to see the doctors recommended to them by their attorneys. Plaintiffs note several of the plaintiffs did not have regular or family physicians, and, for those that did, these physicians had no expertise in chemical exposure. Plaintiffs also take great exception to CITGO's assertions that any plaintiffs who did not immediately seek medical attention after the exposure should be penalized for this delay. It is unrefuted that CITGO told the community the released toxic mix did not pose any immediate health risk, thus inferring no immediate medical attention was

6

necessary. The trial court specifically addressed this issue in its written reasons for judgment:

> It is noted that despite complaints to management and supervision, the employees were reassured there was no risk. CITGO had advised the surrounding and affected areas that the slop oil was not dangerous. This information was a basis for no initial medical evaluations during the first few months. Had CITGO recommended medical evaluations, the symptoms in all probability would have been mitigated.

This court in *Anthony*, 146 So.3d at 253-54, addressed a similar argument concerning an alleged failure to timely seek medical care after a declaration by the defendant tortfeasor that such medical care was not required:

> As to Georgia Gulf's argument that many of the plaintiffs' damages awards should reflect a failure to timely seek medical attention, plaintiffs note the respective trial judges in *Anthony*, *Billiot* and *Brown I* rejected this argument because it found Georgia Gulf failed to adequately inform the public of the nature of the chemicals released. . . .
> Thus, we find the respective trial judges in this consolidated appeal had ample support for disregarding Georgia Gulf's argument that many plaintiffs were lax in seeking medical attention in the days following the exposure.

We find a similar situation occurred in the present case, and find the trial court did not err in disregarding CITGO's arguments that Plaintiffs should be penalized for any alleged failure to seek medical attention in the days and weeks following the exposure.

In its main argument on appeal, CITGO argues the trial court's awards are excessive in this case because the plaintiffs in *Arabie 1*, on average, were awarded $10,546 per plaintiff in general damages, but in the present case the average general damage award to each plaintiff was $29,283.[1] CITGO notes the plaintiffs in both cases were employed by the same employer, worked at the same location, alleged "similar health effects," and had similar exposures. CITGO argues despite these similarities, the same trial court awarded nearly triple the amount of general

---

[1] In brief, CITGO asserts the average general damages awards for each plaintiff was $31,650. This is not accurate, as that amount includes the medical expenses awarded to each plaintiff, which are not general damages.

damages to the plaintiffs in this case. In its brief, CITGO posits an explanation for these increased general damage awards:

> Notably, in the first trial, the district court awarded each plaintiff $30,000 in punitive damages, which the Louisiana Supreme Court later reversed. The increased general damage awards in this case effectively replace the vacated punitive damages awards, providing the plaintiff here with a similar award to that the district court originally ordered in *Arabie 1*. But there is no reasoned basis for tripling general damages for plaintiffs whom the district court found to have the same exposures and health complaints. Indeed, the district court's decision effectively circumvents the Louisiana Supreme Court's decision in *Arabie 1* by replacing the punitive damages awards with exorbitantly high general damages awards for minor symptoms.

We find this hypothesis by CITGO as to the trial court's reasons to be pure speculation. In its lengthy written reasons for judgment, the trial court did not state or infer that he gave higher general damage awards in an attempt to circumvent the supreme court's decision to reverse the punitive damage awards given in *Arabie 1*. Rather, the trial judge gave specific reasons for the amount of damages awarded to each plaintiff, discussing the specific complaints and duration of said complaints. The awards varied, in certain cases significantly, as to each plaintiff, depending on the trial court's view of the severity of the damages suffered. Our review of the record, thus, provides no support for the assertion that the trial court simply "enhanced" the awards to each plaintiff to reach some preconceived level of damages or to circumvent the ruling of the supreme court.

We also find unpersuasive CITGO's argument that the awards in this case were an abuse of discretion because they were significantly higher, on average, than those handed out in *Arabie 1*. Although the trial court noted the injuries of the present plaintiffs were "similar" to those of the plaintiffs in *Arabie 1*, a review of *Arabie 1* discloses many of the plaintiffs in that case sustained injuries that were significantly less in duration than many of the plaintiffs in the present case. Moreover, this court in found several of the awards rendered in that case were

"abusively low." *Arabie v. CITGO Petroleum Corp.*, 10-334 (La.App. 3 Cir. 10/27/10), 49 So.3d 985, 996. This court also found many of the other awards were "somewhat low." *Id.* Thus, any argument that the awards rendered in *Arabie* should affect the trial court's quantum awards in this case are misplaced.

Rather than accept the arguments of CITGO that ask this court to speculate as to the thought process behind these awards, we will instead examine the actual *reasons* set forth by the trial court to determine if they are abusively high.

### **Randall Biddy**

Mr. Biddy was awarded $20,500 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The evidence established Mr. Biddy experienced headaches and had trouble sleeping for approximately twenty-six months. He also had sinus issues, cramps, nausea and throat problems. Mr. Biddy testified his problems impacted his activities and made it difficult for him to enjoy things such as attending his daughter's ball games. The trial court also specifically noted Mr. Biddy became increasingly concerned over the possibility of developing cancer. As addressed previously, we give no credence to CITGO's criticism of Mr. Biddy's failure to seek out medical treatment when his symptoms began. Mr. Biddy stated he attempted to treat himself with over the counter remedies at first, and relied on CITGO's assertion that there were no serious health concerns in relation to the oil spill. We find the awards to Mr. Biddy were substantiated by the evidence and testimony and were not an abuse of the trial court's discretion.

### **Tony Buckelew**

Mr. Buckelew was awarded $14,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. Mr. Buckelew

suffered from headaches for approximately seven months, and for a shorter duration he experienced problems with eye irritation, sore throat, nausea, diarrhea and fatigue. Mr. Buckelew testified it was difficult for him to work with his head "pounding" and he rarely wanted to do anything other than stay at home due to the constant pain. Mr. Buckelew also testified he was concerned about his future health and, specifically, what would happen to his son if something were to happen to him. We find no abuse of discretion in the awards rendered to Mr. Buckelew.

### Allen Fontenot

Mr. Fontenot was awarded $20,500 in general damages for pain and suffering, $15,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The medical evidence established Mr. Fontenot experienced headaches and fatigue for approximately twenty months. He also suffered with nausea, sinus difficulties and chest pain. CITGO criticizes Mr. Fontenot for not complaining of these exposure problems when he was treated by Dr. Nandita Chadha, his family doctor. However, Mr. Fontenot explained he was being treated by Dr. Chadha for erectile dysfunction, and did not discuss his exposure related problems on those visits. Dr. Looney, who Mr. Fontenot saw specifically for his exposure complaints, testified Mr. Fontenot was consistent in his complaints of headaches and fatigue. Dr. Looney testified Mr. Fontenot's pre-exposure state of health did not return until August of 2008. Mr. Fontenot also testified as to his fear of the potential long-term effects the exposure might have on him. We find the medical evidence supports the awards rendered to Mr. Fontenot.

### Christopher Gass

Mr. Gass was awarded $10,250 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. It was established Mr. Gass

suffered from sinus problems for nearly one year and, for a shorter duration, experienced problems with headaches, nausea and fatigue. These problems were related by his doctors to the exposure. CITGO attempts to minimize his problems by noting Mr. Gass continued to exercise throughout this period. However, Mr. Gass testified he struggled to continue exercising and his overall quality of life decreased "dramatically' as a result of his exposure to the slop oil. He also maintained he suffered from constant uncertainty and anxiety surrounding his health as a result of the exposure. We find no abuse of discretion in the trial court's awards to Mr. Gass.

**Michael Greer**

Mr. Greer was awarded $17,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The trial court found Mr. Greer experienced headaches, fatigue and shortness of breath for approximately fourteen months. He also suffered for a shorter duration with difficulty sleeping, sore throat, sinus problems, and eye irritation. CITGO asserts Mr. Greer "saw no doctor or other health care provider on his own for spill-related complaints." However, Mr. Greer notes he did complain of sleeping problem and headaches on his August 29, 2006 and September 8, 2006 visits to Dr. Gamborg, even if he did not specifically relate them to the exposure. We again note CITGO had mistakenly assured area workers that there was nothing to fear from the oil spill. Mr. Greer also maintained he did not discuss the spill specifically with Dr. Gamborg because he was seeing him primarily for assistance with an impulse control disorder. He was examined by Drs. Looney and Springer for the exposure problems, who diagnosed Mr. Greer's condition and associated problems he was experiencing with exposure to the oil spill. Dr. Gamborg stated he would defer to Drs. Looney and Springer in associating the problems he related with the chemical spill. The

11

record also establishes Mr. Greer suffered from anxiety over the potential long-term effects to his health from the exposure, and testified in great detail as to the effects his symptoms had on his daily life. We find no abuse of discretion in the trial court's awards to Mr. Greer.

### Joshua Holland

Mr. Holland was awarded $13,000 in general damages for pain and suffering, $15,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. Mr. Holland experienced headaches and had trouble sleeping for approximately twelve months. He also suffered with nausea, sinus difficulties and dizziness. CITGO points out that Mr. Holland told Dr. Fayez Shamieh, a neurologist he treated with for his headaches, he only had severe headaches every three to four weeks. However, as counsel for Mr. Holland notes, CITGO does not include Mr. Holland's history to Dr. Shamieh that, in between the severe headaches, he suffered from frequent mild headaches. Mr. Holland testified his problems significantly affected his ability to do many of the activities he previously enjoyed. The trial court also specifically noted Mr. Holland was "greatly afraid of future disease," as his grandfather had died of asbestos exposure, and he feared a similar fate as a result of his own exposure. We find the awards to Mr. Holland were substantiated by the evidence and testimony and were not an abuse of the trial court's discretion.

### Yates LeBlanc

Mr. LeBlanc was awarded $10,000 in general damages for pain and suffering, but received no award for the fear of developing a disease or loss of enjoyment of life. The trial court found Mr. LeBlanc experienced fatigue, coughing and difficulty sleeping for approximately three months as a result of the exposure. CITGO argues Mr. LeBlanc stated all of his problems went away when the smell from the oil disappeared, which was approximately four to six weeks

after the spill. Mr. LeBlanc did recall stating in his deposition that everything "*started to fade away* at the same time the smell went away." However, Mr. LeBlanc's testimony does not expressly state that all of his problems ended after the smell went away. The medical records established Mr. LeBlanc was still experiencing some fatigue and sleeping problems three months post-spill. The lesser duration of Mr. LeBlanc's symptoms obviously was noted by the trial court, and he was awarded the smallest general damages award of any plaintiff in this case. The trial court also did not award him any damages for loss of enjoyment of life or fear of future disease, because there was no evidence that he sustained these damages. We find no abuse of discretion in the awards made to Mr. LeBlanc.

### Dale Louvierre

Mr. Louvierre was awarded $17,500 in general damages for pain and suffering, $15,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. It was established Mr. Louvierre suffered from headaches for approximately fifteen months, and had, for a shorter duration, problems with fatigue, nausea, shortness of breath, coughing and difficulty sleeping. Mr. Louvierre testified his health difficulties led him to rarely leave his home, as he did not feel well enough to do much of anything. Mr. Louvierre also testified he watched a close friend die from cancer, and saw the effect it had on his friend's wife and kids. This led to a great deal of anxiety over the potential effects his exposure might have on his future health. We find no abuse of discretion in the trial court's awards to Mr. Louvierre.

### Dustin Miller

Mr. Miller was awarded $18,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The trial court found Mr. Miller experienced nausea and fatigue for one year, as well as an aggravation of pre-

existing sinus issues which lasted nearly two years. He also suffered with headaches, rash, shortness of breath, diarrhea and vomiting. Mr. Miller testified his family life suffered greatly, as he was unable to engage in many activities with his children. He testified he experienced fear and anxiety over the future dangers he believed he was at an increased risk for due to his exposure. We find the awards rendered to Mr. Miller reasonable and not an abuse of the trial court's discretion.

**Morgan Olivier**

Mr. Olivier was awarded $20,500 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. Mr. Olivier suffered from fatigue for approximately twenty-one months, and had, for a shorter period, problems with sinusitis, headaches, nausea, lightheadedness, eye irritation, diarrhea and liver enzyme issues. All these problems were attributed to the exposure to the slop oil. CITGO contend one of plaintiffs' medical experts, Dr. Levy, found Mr. Olivier's fatigue was present for "at most nine months." Counsel for Mr. Olivier counters that Dr. Levy stated "Mr. Olivier's rhinitis/sinus problems and fatigue were present for **at least** nine months." Mr. Olivier testified at his deposition, approximately twenty-one months after the slop oil spill, that he continued to experience fatigue, which left him "drained and tired." Mr. Olivier also testified his family life suffered as he was unable to engage in many activities due to his fatigue. He also clearly expressed anxiety over the fear of future health problems due to his exposure. We cannot say the trial court's awards to Mr. Olivier were an abuse of its vast discretion.

**Darren Romero**

Mr. Romero was awarded $16,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The trial court found Mr. Romero experienced flu-like symptoms for approximately one year, as well as problems with headaches and aggravated back acne. Mr. Romero, who was in college at the time of the spill, testified his health problems significantly impaired his activities. He also testified he experienced severe anxiety due to any potential long-term effects from his exposure, not only to him, but also his father, Willard, who was also a named plaintiff in this case. We find the awards rendered to Mr. Romero reasonable and not an abuse of the trial court's discretion.

**Willard Romero**

Mr. Romero was awarded $15,500 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. Mr. Romero suffered from fatigue for approximately eleven months, and had, for a shorter period, problems with sinusitis, headaches, nausea, sore throat, coughing, eye irritation and diarrhea. CITGO attacks the award to Mr. Romero because he sought medical treatment regarding a possible hernia in the period immediately following the oil spill, but did not expressly seek treatment for his exposure symptoms. However, the physician who Mr. Romero saw for the hernia, Dr. Sabbaghian, was a surgeon, and Dr. Sabbaghian testified he did not concern himself with nor explore Mr. Romero's generalized answers unless it related to a possible hernia. Drs. Springer and Looney treated Mr. Romero for his exposure symptoms, and both concurred that Mr. Romero's fatigue was caused by the exposure. Mr. Romero testified his problems severely impacted his activities with his family and prevented him from doing many of his usual activities, such as gardening. He also testified he is fearful

15

of the effects the exposure may have on him as well as his son, Darren. We find the trial court did not abuse its discretion in the awards made to Willard Romero.

## Joshua Singer

Mr. Singer was awarded $13,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $2,500 in general damages for the loss of enjoyment of life. Mr. Singer suffered from headaches, sinus problems, sore throat, and nausea for approximately seven months. All these problems were attributed to the exposure by his physicians. Mr. Singer testified his symptoms caused him to be very lethargic and, as a result, he became very inactive during the duration of his symptoms. He also testified to a fear over the long-term effects of his exposure. We find no abuse of discretion in the awards rendered to Mr. Singer.

## Dustin Smith

Mr. Smith was awarded $16,500 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The trial court found Mr. Smith experienced headaches for approximately twelve months and, for a shorter duration, experienced problems with sinusitis, nausea and vomiting. Mr. Smith specifically testified his headaches began immediately after his exposure to the spill and were persistent for a year following. CITGO criticizes Mr. Smith for canceling an appointment with Dr. Looney in August of 2007. However, by this time, which was more than a year following the spill, Mr. Smith testified his symptoms had subsided. Mr. Smith testified the debilitating effects of the headaches significantly impacted his life. He also testified he suffered anxiety due to possible long-term effects from his exposure. We find the awards made to Mr. Smith are supported by the record.

16

**Larry Stewart**

Mr. Stewart was awarded $30,000 in general damages for pain and suffering, $10,000 in general damages for the fear of developing a disease and $5,000 in general damages for the loss of enjoyment of life. The evidence revealed Mr. Stewart experienced an exacerbation of his pre-existing chronic obstructive pulmonary disease (COPD) and dizzy spells for approximately ten months. He also suffered with fatigue, eye irritation, sore throat, cough, sinusitis, difficulty sleeping and headaches. The trial court specifically found the accident Mr. Stewart endured where he broke his tail bone "was the result of a dizzy spell brought on by his exposure to the oil spill." CITGO argued all of Mr. Stewart's long-term symptoms pre-dated the spill. However, Dr. Levy testified Mr. Stewart's pre-exposure problems made him more vulnerable to a chemical exposure. The medical records also indicate prior to the spill, the only prescription medicine Mr. Stewart was taking was for high blood pressure. Subsequent to the exposure, Mr. Stewart was prescribed an inhaler and Adavair for his breathing problems, a nasal steroid for his sinus problems, and Benadryl and Decadron for his expiratory wheezing. The trial court obviously agreed that the exposure exacerbated Mr. Stewart's pre-existing COPD and dizziness. We cannot say that finding is erroneous. Thus, the general damage awards made to Mr. Stewart for pain and suffering and loss of enjoyment of life were supported by the record and not an abuse of discretion.

CITGO's second assignment of error addressed the trial court's award to Mr. Stewart of $10,000 for the fear of developing a disease. CITGO contends Mr. Stewart "presented no evidence at trial that he had any fear of developing a future illness because of his alleged spill exposure."

Counsel for Mr. Stewart noted there was unequivocal medical testimony that each plaintiff was at an increased risk of cancer as a result of their exposure. When

17

Mr. Stewart was asked at trial as to why he felt it was necessary to file this lawsuit, he responded that he "was concerned about [his] health." The trial court, in its discretion, found this, along with the vast amount of evidence presented as to the very real increased risk of developing cancer due to the exposure, sufficient to establish Mr. Stewart's genuine concern over his future health. We find no abuse of the trial court's vast discretion in the award of $10,000 to Mr. Stewart for his fear over his future health.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment in its entirety. All costs of this appeal are assessed to Defendant-Appellant, CITGO Petroleum Corporation.

**AFFIRMED.**

RANDALL A. BIDDY, ET AL.

V.

CITGO PETROLEUM CORPORATION

CONSOLIDATED WITH

CRAIG STEVEN ARABIE, ET AL.

V.

CITGO PETROLEUM CORPORATION

CONERY, J., Concurs.

Though I find the awards made in this case on the high end of the damage spectrum for each of these plaintiffs, I recognize that the trial court has great and even vast discretion in setting general damage awards. The trial court carefully analyzed each of the individual claims in lengthy and thorough written reasons for judgment, as did the majority in its detailed and thorough review. I concur that the generous awards given were within the trial court's discretion.