# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-823

**MICHAEL ALBARADO, INDIVIDUALLY, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-2924
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, John E. Conery, D. Kent Savoie and Van H. Kyzar, Judges.

**Keaty, J., concurs in part and dissents in part, assigning written reasons.**

**AFFIRMED IN PART, REVERSED IN PART, AND AMENDED IN PART.**

**Robert E. Landry**
**Patrick D. Gallaugher, Jr.**
**Kevin Paul Fontenot**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry**
**901 Lakeshore Drive, Suite 900**
**Lake Charles, Louisiana  70601**
**(337) 433-9436**
**COUNSEL FOR DEFENDANT/APPELLANT:**
> **CITGO Petroleum Corporation**

**Craig Isenberg**
**Kyle W. Siegal**
**Joshua O. Cox**
**Barrasso, Usdin, Kupperman, Freeman & Sarver,  L.L.C.**
**909 Poydras, 24th floor**
**New Orleans, Louisiana  70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
> **CITGO Petroleum Corporation**

**Marshall Joseph Simien, Jr.**
**Simien Law Firm**
**2129 Fitzenreiter Road**
**Lake Charles, Louisiana  70601**
**(337) 497-0022**
**COUNSEL FOR DEFENDANT/APPELLANT:**
> **CITGO Petroleum Corporation**

**Richard Elliott Wilson**
**Somer G. Brown**
**Jason R. Bell**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
> **Michael Albarado, Individually**
> **Michael Walls, Individually**
> **Craig Miller, Individually**
> **Michael Alfred, Individually**
> **Ragle Celestine, Individually**
> **Robert Long, Individually**
> **Stafford Willis, Individually**
> **Melvin Gray, Jr., Individually**
> **Gary Gunter, Individually**

**Wells Talbot Watson**
**Jake D. Buford**
**Baggett, McCall, Burgess, Watson & Gaughan**
**Post Office Drawer 7820**
**Lake Charles, Louisiana 70606**
**(337) 478-8888**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
  **Ragle Celestine, Individually**
  **Melvin Gray, Jr., Individually**
  **Gary Gunter, Individually**
  **Stafford Willis, Individually**
  **Robert Long, Individually**
  **Michael Albarado, Individually**
  **Craig Miller, Individually**
  **Michael Walls, Individually**
  **Michael Alfred, Individually**

**Kirk Albert Patrick, III**
**R. Heath Savant**
**Donahue, Patrick & Scott, PLLC**
**450 Laurel Street, Suite 1600**
**Baton Rouge, Louisiana 70801**
**(225) 214-1908**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **R & R Construction, Inc.**

**CONERY, Judge.**

Defendant CITGO Petroleum Corporation (CITGO) appeals the trial court's judgment in favor of eight plaintiffs, who while working at the Firestone Polymers plant across Highway 108 from the CITGO refinery in Lake Charles, were exposed on June 19, 2006 to a higher-than-permitted air release of sulphur dioxide (SO2) and hydrogen sulfide (H2S). CITGO stipulated to fault and contested the issue of damages. The trial court awarded each of the eight plaintiffs, Mr. Michael Albarado, Mr. Michael Alfred, Mr. Ragle Celestine, Mr. Melvin Gray, Jr., Mr. Robert Long, Mr. Craig Miller, Mr. Michael Walls, and Mr. Stafford Willis, general damages for pain and suffering,[1] mental anguish, fear of future injury, and medical expenses associated with the exposure. For the following reasons, we affirm in part, reverse in part, and amend in part.

## FACTS AND PROCEDURAL HISTORY

The exposure of the higher-than-permitted air release of the SO2 and H2S was the result of a June 19, 2006 incident at the CITGO refinery which resulted in a major oil and contaminated wastewater spill. The June 19, 2006 spill has been the subject of other cases appealed to this court,[2] but this case presents the first involving the Firestone workers alleged exposure to the higher-than-permitted release of SO2 and H2S from CITGO's operating units, which lasted from approximately 3:00 a.m.

---

[1] CITGO has not assigned as error the awards made to the eight plaintiffs by the trial court for pain and suffering associated with their exposure to the higher-than-permitted air release of the SO2 and H2S. Therefore, the trial court's awards for pain and suffering to the eight plaintiffs are considered a final judgment.

[2] *Arabie v. CITGO Petroleum Corp.*, 10-244 (La.App. 3 Cir. 10/27/10), 49 So.3d 529, *aff'd on liability and causation, rev'd on punitive damage issue*, 10-2605 (La. 3/13/12), 89 So.3d 307 (referred to as *Arabie I*); *Arabie v. CITGO Petroleum Corp.*, 15-324 (La.App. 3 Cir. 10/7/15) 175 So.3d 1180, *writ denied*, 15-2040 (La. 1/8/16), 184 So.3d 694 (referred to as *Arabie II*); *Cormier v. CITGO Petroleum Corp.*, 17-104 (La.App. 3 Cir. 10/4/17), 228 So.3d 770, *writ denied*, 17-2138 (La. 2/9/18), — So.3d —.

until late afternoon on June 19, 2006.[3] It is undisputed that CITGO did not inform the Firestone facility of the release of the SO2 and H2S coming from CITGO's operating units.

A bench trial began on March 7, 2016, and on March 11, 2016, the trial court issued reasons from the bench. The trial court found that the Firestone workers' exposure to the higher-than-permitted release of SO2 and H2S from CITGO's operating units caused injury to the eight plaintiff workers. The injuries suffered primarily consisted of eye irritation, headaches, sore throats, coughing, and sinus irritation. The trial court specifically found that the damages awarded to the eight plaintiffs reflected their injuries for a three-year period from the June 19, 2006 exposure until 2009. Judgment was signed on April 5, 2017. CITGO filed a timely suspensive appeal of the trial court's awards to the eight plaintiffs alleging that the awards for fear of future injury were duplicative of the awards for mental anguish, and there was a lack of evidence to support the awards made to each plaintiff for fear of future injury and for medical expenses.

### ASSIGNMENTS OF ERROR

CITGO asserts the following errors on appeal:

1. The district court erred in awarding damages for fear of future injury, and duplicative mental anguish damages, because plaintiffs presented no evidence that their claimed exposure to SO2 and H2S during the June 2006 event was capable of causing them to have future health problems.

2. The district court erred in granting awards for medical expenses totaling $15,000 ($1,000 to $3,000 for each plaintiff) because six plaintiffs undisputedly presented no evidence of medical expenses, and

---

[3] In *Bradford v. CITGO Petroleum Corp.*, 17-296 consolidated with 17-298, 17-299, 17-300, 17-301, 17-302, 17-303, 17-304, 17-305, 17-306, 17-307, 17-308, 17-309, 17-310, 17-311, 17-312, 17-313, 17-314, 17-315, 17-316, 17-317, 17-318, 17-319, 17-320, 17-321 (La.App. 3 Cir. 1/10/18), ___So.3d ___, a panel of this court affirmed the awards to another group of plaintiffs who were exposed to the higher-than-permitted releases of both SO2 and H2S.

2

the remaining two plaintiffs submitted $150.00 each in medical expenses.

## LAW AND DISCUSSION

### *Standard of Review*

In *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So.3d 1110, 1115-16, the supreme court reiterated the duty of appellate courts in a manifest error review and stated in pertinent part:

> In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass'n*, 02-2660, p. 9 (La. 6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).
>
> This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La. 2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

Errors of law, however, are reviewed *de novo*. *Foti v. Holliday*, 09-93 (La. 10/30/09), 27 So.3d 813. Accordingly, when reviewing an issue of law, we "render[ ] judgment based on the record without deference to the legal conclusions of the lower courts." *Id.* at 817

Proof of causation in toxic tort cases has two components, general and specific. *Pick v. American Medical Systems, Inc.*, 958 F.Supp. 1151 (E.D. La. 1997). "General causation refers to whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (quoting *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 952 S.W.2d 706 (Tex. 1997)). A plaintiff cannot sustain his or her burden of proof with general causation proof alone; the plaintiff must also establish specific causation. *See Berzas v. OXY USA, Inc.*, 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149.

The trial court in this case specifically found that CITGO did not contest the higher-than-permitted release of SO2 and H2S from its facility and that the plaintiffs "all reported symptomology consistent with exposure to H2S and SO2, and most likely both as found in the MSDS reports."[4] The trial court further found that each plaintiff had proved that their complaints, symptoms, and physical injuries were causally related to the release of SO2 and H2S from the CITGO facility on June 19, 2006. The trial court's findings were based on expert testimony supporting general causation and some medical testimony supporting specific causation.

### Assignment of Error Number One - Fear of Future Injury

In its first assignment of error, CITGO claims that the awards for mental anguish and fear of future injury are duplicative and that there is no medical evidence

---

[4] A material safety data sheet (MSDS) "is a detailed informational document prepared by the manufacturer or importer of a hazardous chemical. It describes the physical and chemical properties of the product." *Safety Data Sheet Overview*, BLINK, UC SAN DIEGO, https://blink.ucsd.edu/safety/resources/SDS/index.html (July 29, 2016, 2:28 p.m.). An MSDS "also contain[s] useful information such as toxicity, flash point, procedures for spills and leaks, storage guidelines, and exposure control." *Id.*

in the record to support the plaintiffs' claim that their exposure to the release of SO2 and H2S by CITGO has the potential to cause cancer or any other potential illness than might develop many years after the plaintiffs' exposure in 2006. The trial court awarded each plaintiff $5,000.00 "[f]or general damages (mental anguish)" associated with the exposure, and $10,000.00 each "[f]or general damages (fear of future injury)" associated with the exposure.

In *Duncan v. Kansas City Southern Railway Co.*, 00-66, p.13 (La. 10/30/00), 773 So.2d 670, 682 (citation omitted), the supreme court set forth the standard for a determination of general damages, stating: "General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'"

Fear of future injury and mental anguish damages fall under the category of general damages. A panel of this court stated in *Jones v. Progressive Security Insurance Co.*, 16-463, p. 20 (La.App 3 Cir. 12/29/16), 209 So.3d 912, 926 (quoting *Watson v. Hicks*, 15-56, (La.App. 4 Cir. 5/27/15), 172 So.3d 655):

> General damages may be established in three ways: (i) the circumstances of the case, (ii) expert medical testimony, and (iii) the tort victim's testimony. Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7.02[3] (2004 ed.). "General damages do not have a common denominator and are determined on a case by case basis." *Glasper v. Henry*, 589 So.2d 1173, 1180 (La.App. 4th Cir.1991) (citing *Bernard v. Royal Insurance Co.*, 586 So.2d 607 (La.App. 4th Cir.1991)). The jurisprudence holds that the duration of a plaintiff's symptoms and treatment are relevant factors that courts must consider in assessing general damages. *See Gillmer v. Parish Sterling Stuckey*, 09-0901 (La.App. 1 Cir. 12/23/09), 30 So.3d 782, 788; *Glasper, supra* (noting the factors to be considered in assessing quantum for pain and suffering are severity and duration).

To prove that a plaintiff has a legitimate fear of developing a disease in the future, there must be some basis for that fear, as it cannot be based on mere speculation. *Broussard v. Olin Corp.*, 546 So.2d 1301 (La.App. 3 Cir. 1989). In *Broussard*, a plaintiff who had been exposed to toxic phosgene gas was unable to recover damages for fear of developing cancer as there was no evidence submitted in the record that demonstrated that cancer could result from phosgene gas poisoning. *Id.*

After the plaintiffs in this case claimed that they had read the material safety data sheets (MSDS) for both SO2 and H2S, each of the eight was questioned at trial as to whether they had a fear of future injury from their exposure by CITGO to SO2 and H2S. Some plaintiffs continued to have concerns about their future health, even though the MSDS for both SO2 and H2S stated that neither substance is considered carcinogenic by OSHA and have not been known to cause cancer or other illnesses or conditions that could develop in the future.

In this case, as was the case in *Broussard*, there was no scientific support in the record to justify the eight plaintiffs' concerns or fears of future injury. The plaintiffs' expert, Barry S. Levy, M.D., M.P.H., P.C., testified that he was offering no opinion that any of the eight plaintiffs were at risk for any future health problems. Additionally, Dr. Steve Springer, who was hired by plaintiffs' counsel to offer medical causation opinions and who met with each plaintiff individually, never expressed an opinion to these plaintiffs, or anyone else, that they were at any risk for future illnesses.

In addressing the fear of future injury issue, the trial court stated in its reasons for ruling:

It is the fear of the unknown that bothers people a great deal. . . . Dr. Levy didn't say future effects could not happen. he just couldn't give an opinion on that issue. And, of course, we all know that some things which once were considered safe have now found to be unsafe. . . . With the rapid advancement of medical and scientific technology who knows what future studies will show with regards to these substances. Will these substances be found to be more dangerous than we once thought? We don't know.

In so ruling, the trial court failed to mention the relevant uncontradicted testimony of Dr. Levy, plaintiffs' epidemiology expert, who explained that "the health effects of both sulfur dioxide and hydrogen sulfide have been well-known and well-established, scientifically established for a very long time." Considering the position of the scientific community on the "health effects" of SO2 and H2S, neither Dr. Levy nor Dr. Springer was able to give an opinion that any of the eight plaintiffs were at risk of future health problems.

Although plaintiffs argue that prior cases involving the heavily litigated slop oil spill from CITGO's plant had awarded damages for fear of future injury, those cases involved plaintiffs that had been exposed to oil and wastewater that contained a carcinogen, benzine, which is known as a cancer hazard, and can cause leukemia and other blood disorders. *See Arabie*, 49 So.3d 529; *Arabie II*, 175 So.3d 1180; and *Cormier*, 228 So.3d 770.

This court is aware of the case of *Raney v. Walter O. Moss Regional Hospital.*, 93-145 (La.App. 3 Cir. 12/8/93), 629 So.2d at 491, wherein a panel of this court awarded "fear of future injury" damages to family members who had been exposed to contact with another family member who was a carrier of hepatitis B after contracting the illness at the hospital. As the basis for awarding damages for fear of future injury, this court found in *Raney*, 629 So.2d 485, "there is a real and genuine probability, albeit low, of developing hepatitis B." In this case, there is no "real and

7

genuine probability" that any of the eight plaintiffs will suffer any serious future illness given the testimony of the experts and the evidence in this case.

The trial court noted, "[w]hile the Court is aware that none of the plaintiffs were exposed for a prolonged period of time, which is a relative observation or comment, or sought immediate medical attention or missed work, it is nonetheless – the Court is nonetheless convinced each suffered a compensable personal injury." As a result, the trial court gave each of the plaintiffs awards "[f]or general damages (pain and suffering)" associated with their exposure, ranging from $2,000.00 to a maximum of $6,000.00, based on a three-year time period. CITGO has not appealed these trial court general damage awards.

Dr. Springer's February 12, 2016 expert reports of each of the eight plaintiffs, submitted into evidence at trial in connection with his deposition testimony, discussed both the issues of medical causation and duration of each of the plaintiffs' symptoms. Dr. Springer stated that the plaintiffs' initial symptoms of irritation of the eyes, throat, and sinuses lasted from two to three days, for most, and up to several months for sinus and congestion issues for some. Dr. Springer also stated for each of the eight plaintiffs that they had suffered "an increased frequency of sinus irritation and congestion since the exposure which is believed and likely attributable to said exposure." This part of Dr. Springer's report was accounted for by the trial court when it limited general damage awards to three years as opposed to the ten-year period between the incident in June 2006 and Dr. Springer's February 2016 reports. The trial court stated, "[a]lso, I -- with the increased frequency of sinus problems, I've discounted that over the three years, so it's just the -- up to three years, not for the entire 10 year period."

In considering the circumstances of the plaintiffs' limited exposure to the release of the SO2 and the H2S, as found by the trial court in its reasons for ruling, these plaintiffs have no legal basis for a fear of future injury claim. *Broussard*, 546 So.2d 1301.

In applying the instructions of the supreme court in *Hayes Fund*, 193 So.3d at 1115, requiring that "the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard," we find after a full review of the entire record that the trial court committed manifest error in awarding each plaintiff $10,000.00 "[f]or general damages (fear of future injury)" based on their exposure on June 19, 2006. We therefore reverse the trial court's award of $10,000.00 for fear of future injury to each of the eight plaintiffs.

*Past Mental Anguish Damages*

Having reversed the trial court's award for fear of future injury to the eight plaintiffs, the trial court's award for mental anguish is no longer duplicative. In its reasons for ruling, the trial court discussed the issue of CITGO failing to notify Firestone of the release of SO2 and H2S, in violation of CITGO's own rules that require notification of their neighbors when there is a release and despite mandatory regulations also requiring notification.

Such a notification may have prevented the exposure and allowed the Firestone workers the opportunity to shelter-in-place, as the CITGO workers did at the CITGO CLAW unit, which was also in the path of the higher-than-permitted release of SO2 and H2S. Each of the plaintiffs expressed anger at the lack of notification. The trial court awarded $5,000.00 to each plaintiff for mental anguish based on the following reasoning:

Mental anguish involves not being notified and given a chance to better protect themselves, that being the plaintiffs, and because of Firestone's employees training and common sense they minimized some of their injury. However, it doesn't minimize the anger. They should have been told. And they were angry. Dr. Levy addressed this in his testimony. They were angry then and even now we witnessed one of the exchanges between defense counsel and Mr. Long on that point and he said that -- CITGO's admissions now does (sic) not make him feel better today. Dr. Levy talked about that. And I'm referring to and citing "P-907" which was the article, *Aftermath of a Chemical Spill: Psychological and Physiological Sequelae*. They spelled sequel a little different than I would, but I looked up the word sequel, having just a general understanding of what that meant and it says, what follows. That is what followed. And they talk in that article about the --different case, obviously, "the inability of the -- in the spill in California, the inability of the California Department of Health officials to give accurate and early information on the possible adverse health effects," and we have a little bit more. They didn't tell these plaintiffs they were in fact exposed to these substances. But anyway, "Failure to give the community the possible accurate and early information on the possible adverse health effects of the" -- it appears to be "metam sodium exposure to spill residents was reported overwhelmingly as a contributing cause of fears and worries. Undoubtedly, this lack of accurate information contributed to a lingering anger at the authorities and a heightened fear of future illness." That's very similar to what happened here and I think their anger was justified and understandable. That's the mental anguish component of the award damages -- damages award.

Although the awards in this case were in the extreme high end for such limited exposure and minimal medical evidence, we find no manifest error in the trial court's award "[f]or general damages (mental anguish)" to the eight plaintiffs, and therefore affirm the $5,000.00 awarded to each plaintiff for mental anguish. *See Hayes Fund*, 193 So.3d 1110.

### Assignment of Error Number Two - Medical Expenses

CITGO argues that the trial court erred in awarding a total of $15,000.00 in medical expenses which reflects an award of $1,000.00 to $3,000.00 to each of the eight plaintiffs. CITGO states that there is no evidence in the record to support the award of medical expenses to six of the eight plaintiffs. It is undisputed that six of

the eight plaintiffs, Mr. Albarado, Mr. Alfred, Mr. Celestine, Mr. Long, Mr. Miller and Mr. Walls, did not seek any formal medical treatment because of their exposure. Instead, these plaintiffs claimed that they "self-medicated" with over the counter pharmaceuticals. However, these six plaintiffs presented absolutely no documentation at trial of any medical expenses incurred because of their exposure to SO2 and H2S.

The remaining two plaintiffs, Mr. Gray, Jr. who was awarded $3,000.00 in medical expenses and Mr. Willis who was awarded $1,000.00 in medical expenses, each submitted a single invoice from the Springer Family Medical Clinic, LLC. Mr. Gray's invoice is dated August 1, 2006 and is for an office visit with Dr. Steve Springer on July 25, 2006, in the amount of $150.00. Mr. Willis's invoice is dated August 16, 2006 and is for an office visit with Dr. Springer on August 16, 2006, also in the amount of $150.00.

Special damages are those which theoretically may be determined with relative certainty and especially include past medical expenses and past lost wages. *Kaiser v. Hardin*, 06-2092 (La. 4/11/07), 953 So.2d 802. In reviewing a trial court's factual conclusions regarding special damages, an appellate court "must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong." *Monte v. State Farm Mut. Auto Ins. Co.*, 13-979, p. 14 (La.App. 3 Cir. 5/21/14), 139 So.3d 1139, 1148.

It is undisputed that the two invoices from Dr. Springer are the only two past medical expenses invoices submitted into the record at trial. In their briefing to this court and at oral argument, counsel for the plaintiffs argue that the awards made "for medical expenses associated with his exposure," are for **future medical expenses**.

11

In their petition, the plaintiffs' prayer for damages claimed that each "will continue to incur future medical expenses as recommended by his treating physician."

Although a plaintiff, in addition to past medical expenses, can recover future (post-trial) medical expenses, to do so a plaintiff must establish the future medical expenses will "be necessary and inevitable". *Stiles v. K Mart Corp.*, 597 So.2d 1012, 1012 (La.1992). "To recover future medical expenses, the plaintiff must present medical testimony to show that it is more probable than not that future medical treatment is indicated and the probable cost of the treatment." *Smith v. Municipality of Ferriday*, 05-755, pp. 11-12 (La.App 3 Cir. 2/1/06), 922 So.2d 1222, 1231, *writ denied*, 06-934 (La. 9/29/06), 937 So.2d 860.

However, as we noted prior, the record is devoid of any testimony by a treating physician supporting the plaintiffs' claims that any medical expense awards given by the trial court were for necessary future medical expenses. In the trial court's reasons for ruling, the trial judge specifically stated that the damage awards were based on a three-year period from June 19, 2006 to June 2009.

Based on our review of the record as a whole, we find no reasonable basis in the record for the trial court's award for past medical expenses to the six plaintiffs who did not submit into evidence any documentation of any past medical expenses. Therefore, we reverse the trial court's awards for past medical expenses to Mr. Albarado, Mr. Alfred, Mr. Celestine, Mr. Long, Mr. Miller and Mr. Walls. *See Monte*, 139 So.3d 1139.

For the same reasons, we also amend the award for medical expenses made to Mr. Gray, Jr. from $3,000.00 to $150.00. Likewise, the award of medical expenses made to Mr. Willis is amended from $1,000.00 to $150.00. Both awards are based

on records from Dr. Springer for his one-time treatment of these two individuals, which is the only documentation for medical expenses in the record before the court.

## CONCLUSION

For the foregoing reasons, the trial court's judgment signed on April 5, 2017, ordering CITGO to pay damages of $5,000.00 for mental anguish to Mr. Michael Albarado, Mr. Michael Alfred, Mr. Ragle Celestine, Mr. Melvin Gray, Jr., Mr. Robert Long, Mr. Craig Miller, Mr. Michael Walls, and Mr. Stafford Willis is affirmed. The trial court's judgment of April 5, 2017 awarding damages of $10,000.00 for fear of future injury to Mr. Michael Albarado, Mr. Michael Alfred, Mr. Ragle Celestine, Mr. Melvin Gray, Jr., Mr. Robert Long, Mr. Craig Miller, Mr. Michael Walls, and Mr. Stafford Willis is reversed. We reverse the trial court's judgment of April 5, 2017 awarding damages for past medical expenses to Mr. Michael Albarado, Mr. Michael Alfred, Mr. Ragle Celestine, Mr. Robert Long, Mr. Craig Miller, and Mr. Michael Walls and amend the award for medical expenses made to Mr. Melvin Gray, Jr. from $3,000.00 to $150.00 and the award of medical expenses made to Mr. Stafford Willis from $1,000.00 to $150.00. Each party is to pay their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND AMENDED IN PART.**

MICHAEL ALBARADO, INDIVIDUALLY, ET AL.

VERSUS

CITGO PETROLEUM CORPORATION, ET AL.

**KEATY, J.,** concurs in part and dissents in part.

I concur in the majority's finding that the plaintiffs, Mr. Michael Albarado, Mr. Michael Alfred, Mr. Ragle Celestine, Mr. Melvin Gray, Jr., Mr. Robert Long, Mr. Craig Miller, Mr. Michael Walls, and Mr. Stafford Willis are entitled to $5,000.00 each for mental anguish.

I also concur in the majority's decision to amend the award for past medical expenses because it was manifest error for the trial court to find past medical expenses when there was no evidence or documentation of such expenses. I further concur that the award for past medical expenses must be reduced for Mr. Gray and Mr. Willis to the amounts proven with evidence.

However, I respectfully disagree with the majority's reversal of the award of damages for fear of future injury to the plaintiffs. The record indicates that the plaintiffs were exposed to the gases for over twelve hours; CITGO's own health and safety documents include scientific evidence of the potential harmful effects of such exposure; hydrogen sulfide (H2S) is classified by OSHA as toxic; and finally, the exposure limits as established by the American Conference of Governmental Industrial Hygienist were exceeded. Thus, in my view, the record clearly

establishes that there was a reasonable factual basis for the trial court's conclusion that there was a probability of fear of future injury.

For these reasons, I respectfully dissent in the majority's reversal of the trial court's award for damages for fear of future injury.